Gail N. ROLLER, Plaintiff,

v.

**CITY OF SAN MATEO et al.,
Defendants.**

No. C–75–1345 SC.

United States District Court,
N. D. California.

Aug. 5, 1975.

As Amended Aug. 12, 1975.

Ellen Lake, Charles C. Marson, Joseph Remcho, ACLU Foundation of Northern California, San Francisco, Cal., for plaintiff.

Maurice R. Hamilton, City Atty., City of San Mateo, Cal., for defendants.

## MEMORANDUM DECISION

CONTI, District Judge.

The instant case questions the legality of the City of San Mateo's conduct in requiring plaintiff Gail Roller, an officer in the San Mateo Police Department, to take unpaid leave on the ground that she is temporarily disabled due to being approximately three months pregnant.

Gail Roller was employed by the City of San Mateo initially in 1972 as a

traffic enforcement representative (i. e., "meter maid"). Subsequently, she qualified for an appointment as a policewoman, and received such appointment effective July 1, 1974. On May 17, 1975, she informed Lieutenant Piacente that she was three months pregnant. Piacente thereupon assigned her to office duty pending further review by his supervisors. A few days later, before she had actually assumed any office duties, she was ordered to report for examination to Doctor Miller, the city doctor, who examined her, confirmed that she was three to four months pregnant, and although finding that she was in excellent health and could perform light duties until October or November, 1975, concluded that she should be relieved of the obligations of a sworn officer. Shortly thereafter, she was relieved of all duties and ordered to go on sick leave on the basis of her physical condition.

Mrs. Roller thereupon requested "light duty" in the form of office work only. The City Manager denied said request, apparently after determining that no special project was available. An appeal was filed with the City Personnel Board, which after an administrative hearing, upheld the City Manager's decision.

At the time of her release from duties, Mrs. Roller was the only woman police officer on the San Mateo Police Force. She has, since going on leave, used up all of her sick leave and vacation time, and is presently on a disability leave of absence without pay. Plaintiff contends that as she remains capable of performing limited regular police duties and as the Police Department has routinely found office jobs for male police officers who have been temporarily disabled, the Department's conduct in compelling her to go on leave violates her constitutional rights and is statutorily proscribed under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–2(a)) and 42 U.S.C. § 1983.

■■ In examining the merits of the case at bar, we note that the central and controlling question is whether plaintiff has been treated any differently from similarly situated male officers on the basis of her sex. Numerous cases have pointed out that pregnancy, because it is a condition which is limited to females, cannot be used in employment as a criterion for discrimination, but rather must be treated consistently with other temporary disabilities. Thus, if the defendants consistently and routinely assign temporarily disabled male police officers to general office duties while denying plaintiff a similar opportunity to remain employed, as has been alleged, then defendants' conduct cannot be condoned or justified. If on the other hand, Mrs. Roller has been given the same considerations as her male counterparts in determining whether she should be allowed to continue in less hazardous duty, and if such considerations have been fairly and consistently applied in ordering Mrs. Roller on leave, then plaintiff must be denied relief.

With the exception of brief testimony before this court provided by Officer Nielsen, the case has been submitted, by stipulation, to the court on the basis of affidavits and other documents previously submitted. Based upon the evidence available to this court, we make the determination explained below.

There is little doubt that Mrs. Roller's pregnant condition made it unsafe and physically ill-advised for her to continue full patrol duties. Nonetheless, she argues that she remains capable of performing less strenuous and hazardous duty, and that temporarily disabled male police officers have routinely been assigned to the type of work she now insists she is entitled to. In support of the last argument, she has introduced evidence which indicates that over the last four or five years a number of male officers in the San Mateo Police Department have been assigned office duty for the duration of their disability.

However, defendants contend that the relevant time period to be examined is that which follows February 22, 1974, the date on which John Lilly, as City Manager, issued City Manager Directive #7 (CMD #7).[1] That Directive, which applies to all city emloyees, indicates that all employees must be physically fit to perform full duty and that modified or limited work is not to be assigned to disabled employees,[2] even if such work has been authorized by the treating physician. However, the Directive does provide that the City Manager can grant special permission for less than full duty, which permission is apparently reserved for situations in which the disabled employee can be assigned to a special project. Plaintiff does not argue that such is not the purport and effect of CMD #7, but rather contends that it is merely a pretext for discriminatorily denying pregnant women continued employment.

Notwithstanding plaintiff's protests, we are inclined to attach considerable significance to the issuance of CMD #7 in February, 1974. There can be no doubt that said directive was not designed specifically to discriminate direct- ly against plaintiff since it was put into effect before plaintiff even obtained her initial employment as a traffic enforcement representative. Further, the evidence before this court clearly establishes that the City of San Mateo does not have or implement an arbitrary policy of placing female employees on leave as soon as they are three months pregnant. Rather, all evidence presented in this case indicates that in all cases preceding that of Mrs. Roller, the City had consistently maintained its female employees in their usual capacities so long as they could continue performing their full duties.[3] Such uncontradicted evidence leads this court to believe that the City of San Mateo has historically treated each pregnant employee individually and made a case-by-case determination as to the advisability of the employee's continued active employment on the basis of her ability to carry out the duties of her position.

Plaintiff would have us disregard the February 1974 directive on the grounds that it did not represent a change of policy. In support of that assertion, she points to answers to interrogatories in which it is stated that the

---

1. City Manager's Directive #7 provides in pertinent part as follows:

   City Departments must provide the best possible service to the citizens of San Mateo. To do this all employees must be physically fit to perform full duty.

   To safeguard the health of its employees and to insure maximum service to the citizens, no employee on sick leave or disability leave (Workmen's Compensation leave) is to be assigned modified or limited work, even if authorized by the treating physician.

   Upon request, the City Manager may permit an employee to perform at less than full duty for a particular project.

2. Plaintiff argues that the terms of CMD #7 do not apply to her. We find such argument to be without merit. The intent of the directive is clear and its terms have been broadly applied to include individuals such as plaintiff.

3. The evidence presented to this court reveals that three female city employees whose temporary disability in the form of pregnancy was apparently covered under CMD #7, continued their regular duties so long as each could fulfill her full duties. In fact, one woman, a typist for the city, became pregnant in late 1974 and continued to perform her full duties until one day before giving birth.

   It appears that female city employees, including members of the Police Department, who were pregnant before CMD #7 became effective, were at least occasionally granted modified duty when their pregnancy temporarily disabled them from fully performing their full duties. Thus, it appears that the city has consistently treated pregnant women employees on a case by case basis. It is interesting to note that plaintiff has apparently been unable to direct this court to any instance in which the city or the Police Department has arbitrarily suspended a female employee on the basis of her pregnancy. We therefore find no support for plaintiff's suggestion that the City of San Mateo has an arbitrary maternity leave policy requiring a female employee to be relieved of her duties after her third month of pregnancy.

Police Department has had since 1971 a policy requiring department employees to be fully capable of performing full duties. However, that answer is not inconsistent with the affidavit of John Lilly, City Manager. Lilly was appointed City Manager in November 1973. Three months later, pursuant to the authority vested in that position, he issued CMD #7 to effectuate a change in policy concerning modified duty. Previously, various department heads had been delegated the responsibility for determing whether modified duty was appropriate. Thus, CMD #7 instituted a city-wide policy in an area which apparently had received little consistent direction before. Even if the Police Department had been previously lax in enforcing its "full duty" policy, the issuance of CMD #7 made it incumbent upon an employee to remain fully capable of performing all assigned duties. Lilly's explanation for the issuance and implementation of CMD #7 seems most reasonable. Throughout the consideration of this case it must be kept in mind that CMD #7 was a city directive which governed the practice within the Police Department. It was up to the City Manager as to whether modified duty was appropriate. The Police Department's desire to find a temporarily disabled officer light duty, or its request that modified duty be granted, is essentially irrelevant.

Although plaintiff does not attack the validity of the directive, she does contend that it should be ignored as only a pretext to hide the city's anti-pregnancy, anti-women objectives. As pointed out above, CMD #7 certainly was not issued merely to conceal the city's sexual discrimination against plaintiff since it became effective before plaintiff was employed and considerably before she became pregnant. Further, the evidence of supportive treatment and consideration provided other female employees of the city suggests that it was also not issued in order to justify sexual discrimination against women generally.

Nonetheless, plaintiff argues that this court should consider the favorable treatment given temporarily disabled male police officers before February 1974, as well as after, since the routine granting of modified duty to male officers after that date proves that the issuance of the directive brought about no change and that it was merely a pretext. Such an argument requires this court to examine post-February 1974 practices to determine if the dictates of the directive were carried out or if temporarily disabled male officers were routinely assigned office work. However, as that examination parallels what would be required if we accept defendants' asserted significance of CMD #7, we refrain from considering as relevant the treatment granted male officers before February, 1974.

We therefore turn our attention to the male sworn police officers who have been disabled since February 1974. According to city records, there have apparently been thirteen such individuals who have not received modified duty. However, the completeness and accuracy of such records may be questionable, since, based on evidence submitted by plaintiff, they appear to omit Officer Viri,[4] who is

4. & 5. The affidavit of Sergeant Ryan indicates that he has access to the Department's records and that he has examined those records. Based upon said examination, he states that Officer Kelley was assigned office duty prior to being disabled by appendicitis in March 1974; that such assignment was not related to any disability; that he was on sick leave from November 11 through 28 as a result of the appendicitis attack; that upon his return to duty on December 2, 1974, he presented medical certification that did not in any fashion restrict the performance of his full duties; that he worked in a patrol car on December 4 and 6 and that his work in the office during five other days in December before he went on vacation was due to the fact that he had completed so few days of regular office assignment in December; and finally, that he was not on modified duty status following his appendicitis attack. Ryan's affidavit also states that an exam-

indicated in affidavits of two other officers to have been given office work, and to include Officer Kelly,[5] who was assigned to work in the office. It is also asserted by defendants that three officers, Nielsen, Mackey, and Carson, specifically requested modified duty but had their requests denied. As regards Carson and Nielsen, we find that they neither requested, nor were they granted modified duty. Notwithstanding the conflict between Carson's status as indicated by defendant and what we have found to be his status, the affidavit of Gordon Hall, Captain and Division Commander in the City Police Department, is instructive. It is indicated therein that Hall had received, apparently informally, a request by Carson for modified duty. Hall was aware of CMD #7 and felt bound by it, and accordingly refused the request for modified duty. Thus, it appears that at least Hall was under the impression that CMD #7 applied to all police officers, be they male or female.[6]

Plaintiff submits no evidence which refutes defendants' assertion that Officer Mackey requested a light duty assignment but that said request was denied, despite his being temporarily disabled. It is thus evident that the approval of light duty requests of disabled police officers is not automatic or merely a matter of routine, as contended by plaintiff.

There are but three police officers as to whom there is no dispute as to the fact that they were granted light duty which was subsequent to February 1974. As regards Officers Sheehan and Hourcaillou, both were performing light duty as a result of temporary disability before that time and were allowed to continue light duty for a time thereafter. However, the light duty they performed after February 1974 was essentially in the nature of special projects, as provided for under CMD #7. It was apparently on that basis that the City Manager permitted them to continue performing light duty.[7]

Officer Sibille is pointed to by plaintiff as a classic example of preferential treatment for disabled male officers, since he was granted office work— the exact work requested by plaintiff. In late 1974, Sibille had injured his right arm and elbow while on duty and went on disability leave with full pay. In January 1975, City Manager Lilly learned that while on disability leave, Sibille had been observed duck hunting. Sibille was ordered to report for examination to Dr. Miller and was then returned to office work with restrictions based upon the medical report. We believe that Sibille's case is sufficiently different from that presented by the instant plaintiff and that the reassignment of Sibille to light police duties, which did not constitute a special project, was reasonable and justified by Lilly's concern in preserving morale within the Police Department. It is understandable that Lilly would not want rumors circulating that a police

---

ination of the Department files indicates that Viri was not on modified duty status after the issuance of CMD #7.

We are inclined to accept the more detailed and reasonable explanation of Kelley's office duty. We further note that the discrepancy as regards Viri is perhaps explained by the fact that neither Hall nor Lilly was informed of Viri's disability. The affidavits of Officers Brinkley and Roller (plaintiff's husband) curiously make no mention of the source of the approval granting Viri office work.

6. The fact that Captain Hall felt constrained to follow the provisions of CMD #7 in considering light duty for male police officers

is confirmed in the affidavit of Officer Culmer, submitted by plaintiff. Therein, Culmer stated that Hall informed him that it might be arranged that he be assigned light work due to his injured hand, but that any such assignment to light duty would first require the approval of the City Manager. Culmer turned down Hall's offer of assistance.

7. In this context it is to be noted that plaintiff does not argue that there are now special projects available which would justify her continued employment under the provisions of CMD #7. In fact, Lilly specifically states that no special projects for which plaintiff could qualify are now available.

officer, who claimed to be disabled and who was on leave with full pay, was, in fact, quite healthy, as evidenced by the fact that he had been seen duck hunting.

In summary then, it appears that the granting of light duty office assignments for temporarily disabled male police officers is not automatic; that office work has been granted by Lilly for only one individual (Sibille) and that was under exceptional circumstances which do not parallel plaintiff's situation; that others, who may have been given office work did not have Lilly's approval; that all light duties approved by Lilly were for special projects as provided for by CMD #7; and that it was understood by Hall, as Captain and Division Commander, that CMD #7's requirements were to be applied to male police officers. When the inferences which follow from the above summation are combined with the consistent evidence which indicates that the city does not have an arbitrary maternity leave policy, but treats its pregnant employees on a case-by-case basis, we are bound to conclude that defendants did not discriminate against plaintiff on the basis of her sex in ordering her to discontinue her police duties, but rather reasonably and consistently applied the standards of CMD #7.

## II

Having made a thorough examination of all the evidence made available for this court's consideration the court has concluded above that plaintiff did not meet her burden of proof in establishing that she has been discriminated against on the basis of her sex. Our decision that judgment should be entered in favor of the defendant is further required under our alternative holding that this court is constrained to review the administrative appeal provided Mrs. Roller, upon which review we find that the administrative determination was supported by substantial evidence and that there is no indication that it was arbitrary, capricious, or unreasonable.

Subsequent to being notified of City Manager Lilly's decision to relieve her of her police duties, plaintiff Roller filed an appeal pursuant to Article XV, Personnel Law and Rules. At a Special Meeting on June 10, 1975, the Personnel Board heard Mrs. Roller's appeal. The City Manager had previously waived, in order to expedite the appeal, the procedural requirement that a complaint first be processed through him. Consistent with Mrs. Roller's request, the appeal was conducted as an open hearing. Although plaintiff had not retained legal counsel, she was represented in her appeal by her husband, who is also a San Mateo police officer.[8] The issues and arguments presented before the Personnel Board essentially parallel those now presented to this court. Although less extensive than the evidence made available to this court,[9] the evidence offered before the appeals board presented similar factual disputes as to the treatment afforded other police officers or female city employees. Mrs. Roller's appeal was thereafter denied by the Personnel Board.

Notwithstanding the fact that she was granted an administrative hearing and determination by the Personnel Board, Mrs. Roller contends that she is entitled to a trial de novo before this court. Although the issue is not well settled, the weight of authority is to the contrary. Cf. e. g., *Whitsel v. Southeast Local School District,* 484 F.2d 1222 (6th Cir. 1973); *Tomlin v. U. S. Air Force Medical Center,* 369 F.Supp. 353 (S.D. Ohio 1974); *Hackley v. Johnson,* 360 F.Supp. 1247 (D.C.D.C. 1973); *Spencer v. Schlesinger,* 374 F.Supp. 840 (D.C.D.C. 1974); *McDonald v. Board of Trustees of University of Illinois,* 375 F.Supp. 95

8. The appeal rules permitted the appellant to be represented by anyone she desired.

9. As no witnesses were used by either appellant or respondent, there was obviously no opportunity to cross-examine witnesses against appellant. It is further to be noted that nothing within the rules for appeal prohibited or foreclosed the use of witnesses or any other means of presenting evidence to the Personnel Board.

(N.D.Ill.1974), aff'd, 503 F.2d 105 (7th Cir. 1974); *Handy v. Gayler,* 364 F. Supp. 676 (D.C.Md.1973); see *Schooler v. Navarro County Memorial Hospital,* 375 F.Supp. 841 (N.D.Tex.1973); contra, *Thompson v. U. S. Dept. of Justice,* 360 F.Supp. 255 (N.D.Cal.1973). Although the *Tomlin, Hackley, Spencer,* and *Handy* decisions were concerned with federal employees, plaintiff has not argued, and we are aware of no reasonable arguments which would make the thorough analysis presented in those cases inapplicable to the situation at bar.

Plaintiff's argument to the contrary rests heavily on the Supreme Court case of *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). However, that case considered the binding effect of arbitration proceedings and is, therefore, clearly distinguishable from the case at bar, which must consider the effect of an administrative hearing which was more judicial in nature than are typical arbitration proceedings.

·[8, 9] We, therefore, conclude that this court's proper stance in determining the merits of the instant controversy should be limited to a review of the administrative hearing afforded Mrs. Roller. In arriving at that conclusion, this court shares the reluctance of courts generally to interfere in areas of local concern in regards to which administrative expertise may more appropriately be brought into effect to adjudicate the merits of a controversy.

■■ In reviewing the minutes of the Special Meeting before the Personnel Board, we note no grounds on which plaintiff can base an effective due process claim. We further find that the Board's denial of Mrs. Roller's appeal was based on substantial evidence, was reasonable, and was not arbitrary or capricious. Accordingly, the decision of the Personnel Board should be affirmed.

### III

■■ Finally, plaintiff has asked this court to issue a preliminary injunction continuing the temporary restraining order issued under court order on July 10, 1975. We consider such action by this court ill-advised and inappropriate, and accordingly we deny plaintiff's request for the continuing injunction. The temporary restraining order of July 10, 1975, was granted in order to ensure that defendants did not interfere with plaintiff's efforts in collecting affidavits and compiling documents and records in support of her case to be heard and submitted on July 18, 1975. The case having been tried, the purpose of granting that temporary restraining order no longer is pressing. We note that the expiration and termination of that restraining order does not now give any person or organization a license to punish individuals for constitutionally or statutorily protected conduct. However, the temporary restraining order was not designed to and· did not protect illegal conduct. If this court were to grant the preliminary injunction as requested, we would in effect be prospectively enjoining the commission of a future tort. Such is not a valid justification for issuing a preliminary injunction, and we accordingly deny plaintiff's application for a preliminary injunction.

Therefore, in accordance with the foregoing, it is hereby ordered as follows:

(1) That judgment shall be entered in favor of defendants and against plaintiff; and

(2) That plaintiff's request for a preliminary injunction be, and hereby is, denied.

### ORDER AMENDING MEMORANDUM DECISION

In order to correct a misstatement contained in its Memorandum Decision of August 5, 1975, the court amends that decision as follows:

The sentence commencing at line 14, page 4, should read as follows:

"There can be no doubt that said directive was not designed specifically to discriminate directly against plaintiff since it was put into effect before

plaintiff even obtained her initial employment as a sworn police officer."

The sentence commencing at line 21, page 6, should read as follows:

"As pointed out above, CMD #7 certainly was not issued merely to conceal the city's sexual discrimination against plaintiff since it became effective before plaintiff was employed as a police officer and considerably before she became pregnant."

This amendment in no way alters this court's final decision or judgment.