John M. BATES, Plaintiff-Appellee,

v.

Harold E. SPONBERG et al.,
Defendants-Appellants.

No. 75–2212.

United States Court of Appeals,
Sixth Circuit.

Argued June 10, 1976.

Decided Dec. 20, 1976.

Charles A. Duerr, Jr., Jackson & Lamb, Ypsilanti, Mich., for defendants-appellants.

Gayle S. Boesky, Bernard J. Fieger, Fieger, Golden, Cousens, Southfield, Mich., for plaintiff-appellee.

Before EDWARDS and ENGEL, Circuit Judges, and GREEN, Senior Circuit Judge.*

ENGEL, Circuit Judge.

This appeal presents the question of whether plaintiff, a tenured faculty member at Eastern Michigan University, was denied his right to procedural due process where the hearing on his dismissal was before a body other than that which passed final judgment on his discharge for cause. The district judge held that the University Board of Regents had a self-imposed duty to review the record of plaintiff's discharge hearing, and that its refusal to do so violated plaintiff's Fourteenth Amendment rights. Accordingly, summary judgment was entered for plaintiff.[1]

The plaintiff, John M. Bates, was a tenured associate professor at Eastern Michigan University. During June of 1969 and June of 1970, the Board of Regents of the University entered into two contracts with the State of West Virginia, Department of

---

* The Honorable Ben C. Green, Senior Judge, United States District Court for the Northern District of Ohio, sitting by designation.

1. The court determined that plaintiff was not entitled to a new hearing before the Grievance Committee but instead to have the full record of its hearings transmitted to the Board of Regents with opportunity to make his argument in writing to the Board, and that he was thereafter entitled to have a full review by the Board of the original record. In an amendment to the judgment the district court ordered plaintiff reinstated without teaching duties and with back pay less any money he might have earned during the period of his dismissal. In view of our holding on the principal issue, we do not reach the challenge as to the propriety of this latter provision on the basis that the judgment did not comport with the requirements of *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

Natural Resources, to conduct certain biological studies. Professor Bates, as Director of the Center for Aquatic Biology of the University, was named project leader for these studies. Under its contracts with West Virginia, the University was obliged to submit certain reports in 1971, which in turn became the responsibility of Professor Bates. However, while maintaining that the required reports were timely prepared, Bates nevertheless withheld submission of them to the University "to protest the University's accounting practices which caused irreparable injury to his professional reputation and reputation in the community."

As a result of the University's inability to obtain the report, the Board of Regents directed its president, the defendant Sponberg, to initiate suspension procedures against Bates and to review the possibility of legal proceedings against him to recover those funds which were withheld by the State of West Virginia pending submission of the final report. On October 27, 1972, Bates was notified by the University that charges were being filed against him for the purpose of seeking his dismissal. The adequacy of those charges to notify Bates of the specific grounds for dismissal was not challenged. Basically they were divided into two groups:

A. Charges which dealt with Professor Bates' failure to complete work and reports required for the West Virginia project and

B. Charges which dealt with a series of alleged failures on his part to observe and follow University rules and procedures with respect to the accounting or expenditure of funds and the purchase of equipment.

The procedures governing the dismissal for cause of tenured faculty members by the University are set forth in the school's Faculty Handbook as adopted by the Board of Regents. Following Article III of the Handbook, hearings regarding Professor Bates' dismissal were held before the Faculty Senate Grievance Committee between September 2, 1972 and April 11, 1973, at which plaintiff appeared, presented evidence and was represented by counsel as well as an academic advisor.[2]

Throughout the proceedings verbatim tape recordings were made and copies of these and of the exhibits were made available without cost to the plaintiff. At the conclusion of the hearings on May 26, 1973, the Grievance Committee prepared a report which the district court found to have "succinctly stated the relevant findings of fact." In this report the Committee unanimously concluded:

[T]he action taken by Professor Bates in withholding the final report was unjustified and cannot be condoned. His arguments about 'standards of moral and ethical conduct' cannot be accepted to justify his withholding this report.

The committee concludes that the evidence presented supports the Administration's position that adequate cause for dismissal is present.

The committee report fell short of an outright recommendation that Bates be discharged and instead urged that the administration and the Board of Regents give Professor Bates two weeks in which to submit his report in acceptable form.

Clearly rejecting the Grievance Committee's suggestion that he avoid discharge by submitting the required report, Professor Bates on June 8, 1973 requested a hearing before the Board of Regents. In his request, he specifically asked that President Sponberg transmit to the Board the record in his case, including a transcript of the hearing and all evidence taken by the Committee as well as summaries presented by himself and the administration. He also

2. Professor Bates' charges in his complaint concerning certain irregularities in the hearing before the Faculty Senate Grievance Committee were not reached by the district judge, although in his memorandum opinion he held that "new hearings before the Grievance Committee are not necessary". The defendants herein have not filed motions for summary judgment or sought other summary disposition of the case and hence we do not dispose of these particular claims in the complaint at this juncture.

asked that the Board authorize a public hearing for the purpose of presenting both oral and written arguments.[3]

Article III of Section C. 6. of the Faculty Handbook provides:

### 6. ACTION BY THE BOARD OF REGENTS

If dismissal or other penalty is recommended, the president will, on request of the faculty member, transmit to the Board of Regents the record of the case. Whether or not a hearing will be held at this level shall be at the discretion of the Board of Regents. The Board of Regents' review will include the record of the committee hearing, and, if a hearing is authorized, it will provide opportunity for argument, oral or written or both, by the principals at the hearing or by their representatives. The decision of the Grievance Committee will either be sustained, or the proceeding returned to the committee with specific objections. The committee will then reconsider, taking into account the stated objections and receiving new evidence if necessary. The Board of Regents will make a final decision only after study of the committee's reconsideration.

Upon the recommendation of President Sponberg, the Board of Regents denied Bates' request for a hearing, and approved a report by President Sponberg that his employment with the University be terminated with the conclusion of the 1972–1973

academic year. In addition, the Board also authorized its counsel to initiate appropriate legal proceedings to recover the University's losses from its inability to carry out the West Virginia contract.

It is undisputed that at the time it made the decision to discharge Professor Bates, the Board of Regents had before it the report and recommendation of the Grievance Committee, a further report and recommendation by President Sponberg, and Professor Bates' letter of June 8 requesting a hearing. In the minutes of its meeting of June 20, the secretary reported:

The chairman noted that in Mr. Bates' letter there was no mention of lack of due-process, nor was there any mention of new evidence that had not been considered. After raising several questions, it was further established that Mr. Bates was given every opportunity to have all relative matters heard and there were no complaints that the committee had not been fair during any part of the proceedings—which included tweny-six (sic) sessions, representing approximately 60 hours.

It is also undisputed that although requested by Professor Bates, President Sponberg did not transmit to the Board the actual transcript or tapes of the proceedings, which covered over 60 hours of recordings, nor did he transmit the other files and records, including some 600 pages of exhibits. His failure to do so, and the Board's failure to have the record available and to

---

**3.** The full text of Professor Bates' request of June 8 is as follows:

According to Section D. 6. (sic C. 6.) of the *Faculty Handbook* I am hereby requesting that you transmit to the Board of Regents, the record of the case. This should, I believe, include a transcript of the hearing and all evidence taken by the Committee, including the summaries presented by myself and the Administration.

I am requesting that the Board authorize a hearing, open to the public, as was the Grievance Hearing, for the purpose of presenting both oral and written arguments by the parties involved. The Board should have the opportunity to consider the record of the hearing and the evidence before deciding upon whether a hearing should be granted.

*The decision of the Grievance Committee has not in any way altered my decision about submitting the final report on the West Virginia II Project.* The report of the Grievance Panel is far from complete and does not in any way provide findings of fact according to which any reasonable body could base a final decision as to dismissal. As you are fully aware, my intentions are that the full facts in this matter be completely disclosed. The granting of a hearing by the Board may provide the basis for such disclosure, and perhaps their actions may result in the just context within which the submission of the report will be possible. (emphasis added)

consider that evidence, claims Bates, was a violation by the Board of Regents of Rule C. 6. of its own regulations.

In his opinion the district judge ruled that under Section C. 6. of the Faculty Handbook, the Board of Regents was required to review the actual record made before the Grievance Committee in order to assure itself that the findings were supported by the evidence. He held that a failure to do so under these circumstances denied the plaintiff his due process rights, citing primarily *Yellin v. United States,* 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963), *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), and *Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). The district court determined that such a procedure was required despite its finding that the report of the Grievance Committee was sufficient as a summary of the relevant facts and "adequate for the purpose it was to serve."

While we do not share the district judge's certainty that the procedure employed by the Board of Regents violated its own rules,[4] we assume for the purposes of decision here that it did.

It is important to recognize that the sole issue presented by the complaint in the district court was whether the circumstances alleged therein violated Bates' rights to due process under the Fourteenth Amendment to the United States Constitution.[5] On appeal Bates argues that this constitutional right was violated on two independent grounds: first, that the failure to act in accordance with Rule C. 6. of its own regulations, by itself, violated due process, irrespective of whether the actual procedure would have met the minimal constitutional requirements in the absence of such regulations; second, that the procedure violated the due process guarantee because the Board of Regents, as a final deciding body, if not obligated to take testimony directly, was in any event required to review the evidence in the form it was submitted to the Grievance Committee.

It is not every disregard of its regulations by a public agency that gives rise to a cause of action for violation of constitutional rights. Rather, it is only when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights that a federal court should intervene in the decisional processes of

4. The district judge observed that

There is no real dispute over the meaning of "record" in this section. In the context of the Handbook's Article III, it can only be interpreted to mean the recordings, or transcript of the recordings, or transcripts of the hearings as well as all documents and written arguments; the Court so holds.

However, we note that before the court on summary judgment was the deposition of Bert I. Green, Chairman of the Grievance Committee, whose testimony was to the contrary:

That, in a sense, the Board—first of all, this whole handbook is advisory, and that is probably one of the problems. As a result, you know, this isn't law or legal kinds of stuff, but my interpretation was that the Board would simply review what had transpired. I did not interpret this that they had to go through all the tapes or go through every piece of evidence and make overall reviews and make determinations whether or not they felt there was any additional evidence or cause for hearing other than the one that was given.

It appears to us that this testimony, though perhaps not determinative, would nevertheless create a factual question and should be entitled to the same type of consideration as was accorded the testimony of Congressman Walter concerning his committee's rules in *Yellin v. United States,* 374 U.S. 109, 116–17, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1962). Certainly it was entitled to some weight. *United States v. Smith,* 286 U.S. 6, 33, 52 S.Ct. 475, 76 L.Ed. 954 (1932). Beyond this, we do not pass upon the question, believing it is primarily a matter of state law and one which will be more appropriately determined in the state court proceedings pending in the Washtenaw County Circuit Court.

5. Bates sought relief in the United States District Court under 42 U.S.C. § 1983 and § 1985 and premised jurisdiction upon 28 U.S.C. § 1343(3) and (4). Pendent jurisdiction over any state claim was not sought, and in fact an action commenced by Professor Bates for salary owing him during the period of suspension is pending in the Michigan Court of Claims. This has been consolidated with another action pending in the Circuit Court for the County of Washtenaw, in which the University seeks damages resulting from Professor Bates' failure to submit the report.

state institutions. We conclude that no constitutional violation was shown.

■ While courts have generally invalidated adjudicatory actions by federal agencies which violated their own regulations promulgated to give a party a procedural safeguard,[6] we conclude that the basis for such reversals is not, as Bates asserts, the Due Process Clause, but rather a rule of administrative law. A review of the cases relied upon by the district judge fails to persuade us to the contrary. Agency actions in *Yellin v. United States, supra,* and *Accardi v. Shaughnessy, supra,* were reversed for violations of their own regulations, but the court did not rely on the Due Process Clause.

Similarly, in *Service v. Dulles, supra,* it appears that the court's decision was based upon an interpretation of the regulations in question and not upon notions of due process. There the plaintiff was a former employer of the State Department who had been discharged by the Secretary of State on charges of disloyalty. Under a provision of the so-called McCarran Rider, Act of Oct. 22, 1951, ch. 533, § 103, 65 Stat. 581, the Secretary was given absolute discretion to terminate any employee of the State Department without giving his reasons for so doing. However, under regulations promulgated by the State Department governing dismissal of employees, it was provided that an employee could be dismissed only after his case was decided "on all the evidence" and "after consideration of the complete files, arguments, briefs, and testimony presented." Noting that the Secretary had by his own admission not reviewed all the evidence in the case, but had merely relied upon the report of the Department's Loyalty Review Board, the Supreme Court reversed the decision, taking care, however, to do so on the basis of a judicially-evolved rule of administrative law[7] and not on due process grounds. 354 U.S. at 372, 77 S.Ct. 1152.

■ In addition, disregard of procedural rights is frequently corrected by resort to statutory review powers granted to federal

---

**6.** We note that federal agencies have in some circumstances been permitted to depart from their own regulations where they were intended to govern internal agency procedures and not to protect the interests of the objecting parties. *E. g., American Farm Lines v. Black Ball Freight Serv.,* 397 U.S. 532, 539, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970). We assume for purposes of this argument that the applicable rules in the Faculty Handbook were designed to benefit aggrieved parties during dismissal proceedings.

**7.** We think that the proper basis for invalidating such improper actions in these cases was explained in *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), where the Court, following the *Service* decision, invalidated the dismissal of a government employee because the Secretary of the Interior failed to follow departmental regulations. The Court refused to base its decision on constitutional grounds:

> Petitioner makes various contentions as to the constitutional invalidity of the procedures provided by Order No. 2738. He further urges that even assuming the validity of the governing procedures, his dismissal cannot stand because the notice of suspension and hearing given him did not comply with the Order. We find it unnecessary to reach the constitutional issues, for we think that peti-

tioner's second position is well taken and must be sustained.

*Id.* at 540, 79 S.Ct. at 973.

This statement can certainly be interpreted to mean that the second ground did not of itself involve constitutional considerations. Concurring in this portion of the opinion but dissenting as to other parts, Justice Frankfurter, joined by Justices Clark, Whittaker, and Stewart, explained the basis of the doctrine:

> (I)f dismissal from employment is based on a defined procedure, even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed. . . . This *judicially evolved rule of administrative law* is now firmly established and, if I may add, rightly so.

*Id.* at 546–47, 79 S.Ct. at 976 (citation omitted) (emphasis added).

Courts have not generally found due process violations based solely on disregard of administrative regulations. *Ryan v. Aurora City Bd. of Educ.,* 540 F.2d 222, 228 (6th Cir. 1976); *Edwards v. Board of Regents,* 397 F.Supp. 822, 827–830 (W.D.Mo.1975); *Winnick v. Manning,* 460 F.2d 545, 550 (2d Cir. 1972); *Bistrick v. University of South Carolina,* 324 F.Supp. 942, 949–52 (D.C. Cir. 1971); *See generally,* Note, "Violations by Agencies of Their Own Regulations," 87 Harv.L.Rev. 629, 652 (1974). *Contra, United States v. Heffner,* 420 F.2d 809, 811–12 (4th Cir. 1969).

and state courts.[8] Of course, the authority granted to this court under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.,* does not apply to Eastern Michigan University, a state agency.

■ Since 42 U.S.C. § 1983 offers relief only to those persons whose federal statutory or federal constitutional rights have been violated, we conclude that the mere departure from the university regulations, standing alone, did not deprive Bates of any right which can be asserted in this court.

Bates also argues on appeal that the actual procedure followed by the Board of Regents, without respect to the Handbook violations, deprived him of his due process protections because the members failed to consider properly the evidence in the original record. The cases cited by Bates and the district judge fail to convince us that he was not treated with fundamental fairness in light of the total circumstances.

The case most heavily relied upon by Bates on appeal is *Morgan v. United States,* 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936), an action brought by fifty marketing agencies which challenged an order of the Secretary of Agriculture fixing the maximum rates to be charged for the buying and selling of livestock in the Kansas City stockyards. The Supreme Court found the Secretary's decision defective because the Secretary had failed to accord petitioners a full hearing before making the decision. Again, the decision was based upon statutory and not constitutional grounds:

> Nor is it necessary to go beyond the terms of the statute in order to consider the constitutional requirement of due process as to notice and hearing. For the statute itself demands a full hearing, and the order is void if such a hearing was denied.

*Id.* at 477, 56 S.Ct. at 910.

The primary defect which the Supreme Court found in the procedure followed by the Secretary of Agriculture in *Morgan* was his failure to consider the evidence which had been presented, though under a statutory duty to make the decision. The plaintiff claims that this decision, together with Justice Hughes' observation that "the one who decides must hear," indicates that the Board of Regents' conduct violated due process. We believe, however, that in its context, the statement relied upon as well as the overall nature of the decision fail to support Bates' claim. The Supreme Court elaborated:

> There is thus no basis for the contention that the authority conferred by section 310 of the Packers and Stockyards Act is given to the Department of Agriculture, as a department in the administrative sense, so that one official may examine evidence, and another official who has not considered the evidence may make the findings and order. In such a view, it would be possible, for example, for one official to hear the evidence and argument and arrive at certain conclusions of fact and another official who had not heard or considered either evidence or argument to overrule those conclusions and for reasons of policy to announce entirely different ones. It is no answer to say that the question for the court is

---

8. *Trout Unlimited v. Morton,* 509 F.2d 1276, 1282 (9th Cir. 1974), *Lathan v. Brinegar,* 506 F.2d 677, 693 (9th Cir. 1974). The federal Administrative Procedure Act provides in 5 U.S.C. § 706 (1967):

> The reviewing court shall—
>
> * * * * * *
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> * * * * * *
>
> (D) without observance of procedure required by law . . .

The Michigan Administrative Procedure Act provides an example of state statutory authority:

> (T)he court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the *petitioner* have been prejudiced because the decision or order is any of the following:
>
> * * * * * *
>
> (c) Made upon unlawful procedure resulting in material prejudice to a party.

3 M.C.L.A. § 24.306 (Cum.Supp.1976). *See Montiy v. Civil Service Board,* 54 Mich.App. 510, 221 N.W.2d 248, 251 (1974).

whether the evidence supports the findings and the findings support the order. For the weight ascribed by the law to the findings—their conclusiveness when made within the sphere of the authority conferred—rests upon the assumption that the officer who makes the findings has addressed himself to the evidence, and upon that evidence has conscientiously reached the conclusions which he deems it to justify. That duty cannot be performed by one who has not considered evidence or argument. It is not an impersonal obligation. It is a duty akin to that of a judge. The one who decides must hear.

This necessary rule does not preclude practicable administrative procedure in obtaining the aid of assistants in the department. Assistants may prosecute inquiries. Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates. Argument may be oral or written. The requirements are not technical. But there must be a hearing in a substantial sense. And to give the substance of a hearing, which is for the purpose of making determinations upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them. That duty undoubtedly may be an onerous one, but the performance of it in a substantial manner is inseparable from the exercise of the important authority conferred.

*Id.* at 481–82, 56 S.Ct. at 911.

■ We think the crux of the issue, in terms of due process under the Fourteenth Amendment, is not whether the due process hearing to which Professor Bates may have been entitled was held in the presence of the authority having final responsibility to determine his discharge, but instead whether the hearing accorded him was meaningful. We believe this question must be measured in terms of the issue to be decided, who is ultimately to decide it, and the manner by which the hearing is employed in the decisional process, in light of the

realities of efficient administration in modern government. We thus agree with Professor Davis in the interpretation which he places upon *Morgan* :

According to the opinion in the leading First Morgan case, the requirement is not that deciding officers must personally read the record but it is that they must personally "consider and appraise" the evidence. The Court declared: "Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates." Since the only purpose of sifting and analyzing of evidence by subordinates is to save the time of the deciding officers, this necessarily means that deciding officers may "consider and appraise" the evidence by reading a summary or analysis prepared by subordinates. The Supreme Court thus did not require in the First Morgan case that deciding officers must read all the evidence or even that they must directly read any of it. The requirement has to do with personal understanding of the evidence, not with the mechanics by which the understanding is developed. In common practice, deciding officers develop their understanding of evidence not only through reports of subordinates but especially through summaries and explanations in briefs and oral arguments of parties.

2 Davis Administrative Law § 11.03 at 44–45 (1958) (footnotes omitted). *See National Nutritional Food Ass'n. v. Food & Drug Administration,* 491 F.2d 1141, 1144–46 (2d Cir. 1974), *cert. denied,* 419 U.S. 874 (1974); *Braniff Airways, Inc. v. CAB,* 126 U.S.App. D.C. 399, 379 F.2d 453, 461 (1967); *Dougherty v. Walker,* 349 F.Supp. 629, 646 (W.D. Mo.1972). *But see, Crouse Cartage Company v. United States,* 343 F.Supp. 1133, 1140 (N.D.Iowa 1972).

Also, in *Service v. Dulles, supra,* cited by the plaintiff, the Court indicated that an officer with dismissal authority could properly delegate to another person the task of reading the file and considering the evidence:

We do not, of course, imply that the Regulations precluded the Secretary from discharging any individual without *personally* reading the "complete file" and considering "all the evidence." No doubt the Secretary could delegate that duty. But nothing of the kind appears to have been done here.

354 U.S. at 387, n. 40, 77 S.Ct. at 1165.

█ Measured by the standards of *Morgan,* as we interpret them, the Board of Regents' consideration and action upon the report of the Grievance Committee met the minimal requirements of due process. Nothing in the record here nor in the district judge's opinion suggests that the Grievance Committee's report was deficient, contained factual inaccuracies or did not fairly summarize the evidence before it. Bates was discharged because he refused to submit the required report, a fact which was never in dispute and which was even admitted specifically by him at the time he demanded his hearing.[9] We think that the reports by the Committee and President Sponberg provided a sufficient basis for the Board of Regents to acquire a "personal understanding" of the evidence supporting the charges against Bates.

The judgment of the district court is reversed and the cause remanded for further proceedings consistent herewith.

9. The issue of whether a due process hearing is required at all where the tenured teacher has at all times admitted the truth of the charge against him was not raised in the district court *and we do not reach it here.*