Clifford JONES, Plaintiff,

v.

William M. MORRIS, et al., Defendants.

No. 8785.

United States District Court,
S. D. Ohio, W. D.

Aug. 28, 1981.

Paul H. Tobias, Cincinnati, Ohio, for plaintiff.

Frederick G. Cloppert, Jr., Columbus, Ohio, for amicus curiae Ohio Education Assn.

Philip S. Olinger, Terrace Park, Ohio, for defendants.

## OPINION AND ORDER

Before JONES, Circuit Judge, and SPIEGEL and RICE, District Judges.

SPIEGEL, District Judge.

The instant action, arising under 42 U.S.C. § 1983, involves a question of procedural due process by challenging the constitutionality of Ohio Rev.Code § 3319.16. This statute provides the procedure to be followed when the dismissal of a tenured teacher for cause is sought, as interpreted by the courts of the State of Ohio. The suit was brought by a tenured public school teacher who was discharged under the procedures outlined in that statute. This teacher, Mr. Clifford Jones, alleges that the Mt. Healthy School Board (the Board), terminated his employment without a proper hearing as required by the due process clause of the Fourteenth Amendment of the Constitution, and seeks to avoid the operation of Ohio Rev.Code § 3319.16 on that basis.

Since Mr. Jones is seeking an injunction against the enforcement of a state statute on the grounds of unconstitutionality, a three-judge panel was convened pursuant to 28 U.S.C. § 2281 to consider the case. Although that statute was repealed in 1976, the repeal is not effective as to actions, such as this one, which were pending on that date.

Mr. Jones taught in the Mt. Healthy City School District from 1955 until 1973. In April of the latter year, the Board notified him that it was considering terminating his employment with the School District, and that, pending final hearing on the matter, he would be placed under immediate suspension. In response, Jones filed the instant action (doc. 1).

The facts surrounding Jones' termination by the School Board were stipulated by the parties. On April 5, 1973, the Board sent Jones a letter advising him of the Board's intention to consider the termination of his current continuing teaching contract on eight different grounds, each of which was numbered and specifically stated. Five days later, Jones, through his counsel, wrote the Board a letter in which he elected to have a hearing before a referee instead of the Board, which was his statutory option. The hearing, at which Mr. Jones was represented by counsel, included the testimony of twenty witnesses and lasted for eight days. One week after the termination of the hearing, Jones and the Board received the referee's report. This report made specific findings of fact and conclusions regarding the written charges against Jones. The report consisted of six pages detailing specific incidents which the referee felt supported the charges numbered one, two, three and six. The report also indicated that, in the referee's opinion, there was insufficient evidence to support charge eight and that charges four, five, and seven were insubstantial. The referee decided that the actions specified in charges one, two, three and six existed in such degree and continued over such a period of time as to amount to insubordination and constituted good and just cause for Jones' termination. Accordingly, he recommended to the Board that Jones be terminated.

Two days after receipt of the referee's report, the Board met at its regularly scheduled meeting. Neither Jones nor his counsel were notified of this meeting, nor were they in attendance. At that meeting, legal counsel reported on the findings and recommendations of the referee regarding Jones' continuing contract. The minutes of that meeting reflect that after some discussion and consideration, the Board, four of its five members in attendance, voted to accept the report of the referee and also voted to terminate the continuing teaching contract of the plaintiff on the grounds set forth in the report.

Jones' attorney did write the Board to request a hearing before the Board with respect to the referee's report. He also asked that they be notified in advance of any proceeding of the Board concerning Mr. Jones' proposed termination and that Mr. Jones be furnished with a copy of the record of the proceedings before the referee. The Board received this letter the day after their meeting. It advised Jones in a letter dated June 27, that the Board had voted to terminate his contract after considering the referee's report, and that he had thirty days to file a notice of appeal with the Court of Common Pleas of Hamilton County, Ohio. The Board also noted that it would consider the requests stated in Jones' letter at their next, regularly scheduled meeting.

Jones' attorney did appear at this next meeting and asked that he be allowed to be heard at a special meeting of the Board at a future date and that the Board read the transcript of the referee when it became available. On August 9, 1973, the Board notified Jones' attorney that Ohio Rev.Code § 3319.16, in their opinion, did not require such a hearing, and, on that basis, denied his request. The transcript of the hearing, which totalled 1605 pages and included 90 exhibits, was not delivered to the Board until November 28, 1973.

On July 6, 1973, counsel for Jones moved to amend his existing federal complaint by adding Count V (doc. 15) to reflect his employment termination and to further allege that the denial of an opportunity to be heard before the Board itself violated the requirements of procedural due process. He also appealed the Board's decision to the Hamilton County Court of Common Pleas pursuant to Ohio Rev.Code § 3319.16. The District Court, noting that plaintiff had raised the issue of the proper interpretation of Ohio Rev.Code § 3319.16 in the state court proceedings, and noting further that the state courts of Ohio had never had an opportunity to rule on this statute, stayed all proceedings, including Jones' motion to amend, pending the finality of the state court proceedings instituted by Jones (doc. 24).

Jones pressed his constitutional claims as far as he could within the state court system. The trial court, on Jones' motion for summary judgment, determined that the Board was the "final decision maker" and that due process mandated that Jones receive some kind of hearing before the Board. *Jones v. Board of Education*, No. A–735247 (C.P.Ham. County 1977). The Court believed that at a minimum Jones was entitled to file objections to the referee's report and to appear and argue such objections orally before the Board. *Id.*, slip op. at 7.

On appeal, the Court of Appeals for the First Appellate District of Ohio reversed, holding that the plain language of the statute contemplated two distinct and mutually exclusive avenues for the resolution of disputes concerning termination of a teacher's employment, and that Jones' election of one of those avenues, a hearing before a referee, constituted a waiver of the other, a hearing before the Board. *Jones v. Board of Education*, 60 Ohio App.2d 138, 395 N.E.2d 1337 (Ct.App.Ham. County 1978) 14 Ohio Ops.3d 108. Having decided that, the Court of Appeals went on to hold that the statute, so construed, did not violate Jones' constitutional right to due process of law. The Court found the decision of *Whitsel v. Southwest Local School District*, 484 F.2d 1222 (6th Cir. 1973) to be dispositive of Jones' claims. Accordingly, the Ohio Court of Appeals reversed the judgment of the trial court, and remanded the case for a determination in the common pleas court of the sufficiency of the evidence and whether such evidence constituted sufficient cause for termination. Jones appealed and the Supreme Court of Ohio dismissed that appeal on the ground that no substantial constitutional question existed. *Jones v. Board of Education*, No. 78–1322 (S.Ct.Ohio 1978). Thus, Jones' constitutional claims were finally determined by the state courts.

Having obtained the authoritative state court construction for which this Court abstained, Jones returned to the District Court for a final determination of his claim despite the fact that Jones' appeal to the common pleas court has never been finally decided. The District Court, in an order dated March 11, 1980, granted Jones' motion for leave to amend his complaint and his motion to convene a three-judge district court, which is the panel presently constituted, pursuant to 28 U.S.C. § 2284 (doc. 59). In granting such motion, the District Court was of the opinion that the state court's construction of Ohio Rev.Code § 3319.16 left open constitutional issues which were fairly subject to debate.

This case came before the panel for oral argument on May 28, 1981 on cross motions for summary judgment filed by the parties (docs. 49 and 50), plaintiff's amended complaint and defendant's answer (docs. 44 and 47), memoranda in opposition to the motions for summary judgment (docs. 52 and 55), defendant's reply memorandum (doc. 57), and the stipulation of facts with accompanying exhibits (doc. 56). In addition, subsequent to oral argument, an *amicus curiae* brief was filed by the Ohio Educational Association on Jones' behalf (doc. 83). The only issue before the panel at this time, all other issues raised by the parties in connection with this action having been previously disposed of, is whether Ohio Rev.Code § 3319.16, as interpreted by the Ohio courts, affords a teacher a meaningful hearing, in the context of Fourteenth Amendment due process, if there is no provision for the teacher to interpose his objections to the referee's report and recommendation to the Board before it rules on the report of the referee concerning the termination of the teacher's contract.

The Supreme Court has consistently held that some form of hearing is required before an individual is finally deprived of a property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, at 333, 96 S.Ct. at 902; *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

■ Due process, unlike some legal rules, is not a rigid concept with a fixed content unrelated to time, place, and circumstances; rather, it is flexible and calls for such procedural protections as the particular situation demands. *Mathews v. Eldridge, supra.* Accordingly, the *Mathews* court used the traditional balancing test · to determine whether the procedures involved in the termination of social security disability benefits were constitutionally sufficient. They stated:

> Identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335, 96 S.Ct. at 903.

The *Mathews* criteria have been held applicable to determine the sufficiency of procedures in cases where a property interest is in danger of being terminated by the state. *Frumkin v. Board of Trustees, Kent State University*, 626 F.2d 19 (6th Cir. 1980).

■ Under Ohio Rev.Code § 3319.16, tenured teachers, such as plaintiff, have an interest in their continued employment and cannot be terminated except for "gross inefficiency or immorality; for willful and persistent violations of reasonable regulations of the board of education; or for other good and just cause." Ohio Rev.Code § 3319.16. Such an interest is a property interest protected by the Fifth and Fourteenth Amendments to the United States Constitution. It cannot be terminated without affording a teacher certain procedural due process rights which dictate, that at the very minimum, he be accorded notice of the grounds for his termination and a hearing at which he is given the opportunity to challenge the sufficiency of those grounds. *Perry v. Sinderman*, 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972).

Ohio Rev.Code § 3319.16 provides specific procedures to be followed in a proceeding to terminate a tenured teacher's contract. The statute entitles a teacher to written notice of the charges against him and of the date and time of the evidentiary hearing. The hearing may be had before the Board or before a referee. In either case, the teacher is entitled by statute to be represented by counsel, to call witnesses on his behalf, and to confront and cross-examine witnesses against him. The evidence is to be limited to the charges, and a stenographic record is to be made of the entire proceedings, a transcript to be furnished to the teacher. If the hearing is before a referee, the referee must file his report within ten days after the date the hearing terminates. The board must consider the referee's report, after which it may accept or reject the referee's recommendation on the termination of the teacher's contract. Any order of termination must state the grounds therefor. The statute further provides that any teacher affected by an order of termination may appeal the determination to the court of common pleas of the county in which the school is located, which shall be an original action in such court. The court shall examine the transcript and record of the hearing, shall hold such additional hearings as it deems advisable, and may consider other evidence in addition to the transcript and record. The procedure just described was followed in the instant case, with the hearing being held at plaintiff's request before a referee. The Sixth Circuit has determined that this statute provides all the procedural process that is due. *Whitsel v. Southeast Local School District*, 484 F.2d 1222 (6th Cir. 1973).

In *Whitsel*, a tenured teacher was given a hearing before the school board which, pursuant to Ohio Rev.Code § 3319.16, terminated his contract. He filed an action in federal court pursuant to 42 U.S.C. § 1983 alleging, *inter alia*, that he had been denied due process of law because the board was not an impartial decisionmaker. The court

upheld the constitutionality of the statute on the basis that, had he felt the board was biased, the teacher had the statutory option to demand a hearing before an impartial referee. The court went on to state:

> The pertinent Ohio statute specifies the grounds for termination of a continuing contract, requires written notice and time to prepare a defense, and provides the option of requesting a referee to conduct the hearing instead of the school board, a stenographic record, the right of confrontation, the right to counsel, and the right to subpoena witnesses. It also provides for plenary review of an order of termination in the state courts. Tested by every standard ever enunciated, these rights constitute procedural due process in a contract termination proceeding. *Id.* at 1229.

The court also noted that Ohio Rev.Code § 3319.16 gave the teacher a forum in the court of common pleas in which to litigate the question of whether the conduct complained of constitutes sufficient cause for dismissal and the issues concerning the commitment of infractions of rules and the propriety of any sanction.

■ The scope of review of the common pleas court under § 3319.16 was determined in *Hale v. Board of Education*, 13 Ohio St.2d 92, 234 N.E.2d 583 (1968). The common pleas court has the authority to weigh the evidence on an appeal from an order of the board terminating a teacher's contract, and, although it may not consider the matter *de novo*, if it does not find that the board's order is supported by reliable, probative, and substantial evidence and is in accordance with law, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative and substantial evidence and is in accordance with law. *Cf. University of Cincinnati v. Conrad*, 63 Ohio St.2d 107, 407 N.E.2d 1265 (1980).

Plaintiff argues that despite all of these procedural precautions, Ohio Rev.Code § 3319.16 is unconstitutional if, in the case where a teacher chooses to have a hearing before an impartial referee, it does not accord him his alleged due process rights to have the board make its decision on all of the evidence, as opposed to solely on the basis of the referee's report, and to have the right to appear in person before the board and state his objections to the referee's report. Plaintiff relies heavily on *Morgan v. United States*, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936) (*Morgan* I) and *Kinsella v. Board of Education*, 378 F.Supp. 54 (W.D.N.Y.1973) for the former allegation and *Goldberg v. Kelly*, 397 U.S. 254, 259, 90 S.Ct. 1011, 1015, 25 L.Ed.2d 287 (1970) for the latter.

*Morgan* I dealt with an order of the Secretary of Agriculture which established maximum rates to be charged by market agencies at the Kansas City stockyards. The agencies challenged the order on the basis that the Secretary had neither heard nor read the evidence presented in connection with the administrative proceedings; nor had he heard or considered oral arguments on briefs submitted by the agencies regarding the evidence taken. The applicable statute required a full hearing, and the market agencies contended that this had been denied them by the Secretary's failure to consider the evidence.

The Supreme Court noted that if the Assistant Secretary to whom the duty of holding the hearing had been assigned had received the evidence taken by the examiner, had heard argument thereon, and had then found the essential facts and made the order upon his findings (in fact, what was performed by the referee in the case under consideration), the issue would simply be one of delegation. But, for a constitutionally sufficient due process hearing to be accorded, one official may not examine the evidence while another official, who has heard neither evidence nor argument, makes the findings and order. Yet, this language does not require the ultimate authority to hear all the evidence.

*Morgan* I has consistently been interpreted to allow the decisionmaker to base his decision on the reports, findings, or summaries of those delegated to hear the evidence. *Yaretsky v. Blum*, 629 F.2d 817, at 823 (2d

Cir. 1980); *Seacoast Anti-Pollution League v. Costle*, 572 F.2d 872, at 880, 881 (1st Cir. 1978); *Bates v. Sponberg*, 547 F.2d 325, at 331 (6th Cir. 1976); *Montrose Chemical Corp. v. Train*, 491 F.2d 63, at 69 (D.C.Cir. 1974); *National Nutritional Foods Association v. F. D. A.*, 491 F.2d 1141, at 1144, 1145 (2d Cir. 1974); *Braniff Airways, Inc. v. C. A. B.*, 379 F.2d 453, at 460 (D.C.Cir.1967); *Utica Mutual Insurance Company v. Vincent*, 375 F.2d 129, at 131, 132 (2d Cir. 1967); 2 Davis Administrative Law § 11.03 (1958). With the exception of *Utica Mutual, Yaretsky*, and *Bates*, the holdings in the above cases were based on an interpretation of the requirements of the Administrative Procedure Act under the rules of administrative law. Only *Utica Mutual, Yaretsky*, and *Bates* addressed the issue of constitutional due process directly.

In *Utica Mutual*, Judge Friendly stated that the due process clause of the Fifth Amendment, even when it required a "trial type" hearing, did not require that sensible rules of judicial administration be frozen into a constitutional imperative which would require that the decider actually hear the evidence or be furnished a report on the credibility of witnesses. *Utica Mutual*, 375 F.2d at 131, 132. Relying on Mr. Justice Robert's statement in *N. L. R. B. v. Mackay Radio & Tel. Co.*, 304 U.S. 333, 350–351, 58 S.Ct. 904, 912, 82 L.Ed. 1381 (1938) that "the Fifth Amendment guarantees no particular form of procedure; it protects substantial rights," Judge Friendly recognized that the due process clause does not require, under all circumstances, that factual determinations be made by the person hearing the evidence. *Id.* at 132.

*Yaretsky v. Blum*, dealt with due process requirements in a transfer of a Medicaid patient from a lower level of care to a higher one. The Court found that due process required timely notice and a hearing, but the court squarely held that the Fourteenth Amendment to the United States Constitution did not require a decisionmaker to read the hearing transcript prior to issuing a final administrative order. In *Yaretsky*, the court found that patients about to be transferred had a statutory right to a fair hearing provided by the state. The hearing is conducted by a hearing examiner who listens to the testimony, prepares a summary, and makes a recommendation to the Commissioner. The fact that the Commissioner's decision was based on the hearing officer's summary of facts was held to be sufficient. The Court suggested that the chief purpose of a state statutory requirement that a transcript be made was to allow judicial review.

*Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976) involved the dismissal of a tenured faculty member from Eastern Michigan University. The plaintiff was accorded a hearing before the Faculty Senate Grievance Committee, pursuant to the school's procedures governing dismissal for cause of tenured faculty members as set forth in the school's Faculty Handbook and adopted by the Board of Regents. A transcript of the proceedings was made, and the Grievance Committee prepared a report which the District Court found to have succinctly stated the relevant findings of fact. The committee concluded that adequate cause for dismissal was present, but recommended against outright discharge.

The professor requested a hearing before the Board of Regents and specifically asked that President Sponberg transmit to the board the record in his case, including the transcript of the hearing and all evidence taken by the committee as well as summaries prepared by himself and the administration. Bates also asked for a hearing before the Board for the purpose of presenting oral and written arguments.

President Sponberg did not transmit the record as requested by Bates and as required by the dismissal procedures in the Faculty Handbook. All that the Board received was the report and recommendation of the grievance committee, a further report and recommendation of dismissal by President Sponberg, and Bates' letter requesting a hearing and transmittal of the record. The Board of Regents denied Bates' request for a hearing and approved Sponberg's report that Bates be dismissed.

The Sixth Circuit, recognizing that the sole issue present was whether the circumstances presented violated Bates' right to due process under the Fourteenth Amendment to the United States Constitution, held that no constitutional violation had been shown. The court noted that although courts did generally invalidate adjudicatory actions by federal agencies which violated their own regulations promulgated to give a party a procedural safeguard, the basis for such reversals was not the Due Process Clause but rather a rule of administrative law. *Bates*, 547 F.2d at 330, fn. 7. The court held that the mere departure from university regulations, standing alone, did not deprive Bates of any constitutional right.

The Court further held that, measured by the standards of *Morgan* I, the Board of Regents' consideration of and action upon the report of the grievance committee met the minimal requirements of due process, since the reports by the committee and by President Sponberg provided a sufficient basis for the Board to acquire a personal understanding of the evidence supporting the charges against Bates. The Court reasoned as follows:

> *We think the crux of the issue,* in terms of due process under the Fourteenth Amendment, *is not whether the due process hearing to which Professor Bates may have been entitled was held in the presence of the authority having final responsibility to determine his discharge,* but instead whether the hearing accorded him was meaningful. We believe this question must be measured in terms of the issue to be decided, who is ultimately to decide it, and the manner by which the hearing is employed in the decisional process, in light of the realities of efficient administration in modern government. (emphasis added)

The *Bates* Court also distinguished *Morgan* I on the ground that that decision was based on statutory and not constitutional grounds. *Id.* at 331.

■ Thus, under *Morgan* I, *Utica Mutual, Yaretsky,* and *Bates* there is no require-ment, constitutional or otherwise, that a decisionmaker in an administrative adjudication consider the actual evidence produced in a hearing before a hearing officer before making its final decision. A constitutionally sufficient review of the evidence entails consideration of a report, summary, or findings and recommendations prepared by the hearing officer. Clearly the board, in the instant case, violated no constitutionally mandated precepts in basing its decision to terminate Jones on the basis of the referee's report and recommendation. The referee's report included a detailed and specific review of the evidence pertaining to the charges against Jones as well as the referee's conclusions that the evidence was sufficient to show good and just cause for Jones' termination, which he recommended.

*Kinsella v. Board of Education,* 378 F.Supp. 54 (W.D.N.Y.1973) *aff'd* without opinion 542 F.2d 1165 (*Kinsella* I) also relied on by Jones, is inapposite. The *Kinsella* Court considered a New York state statute which it found did not require the decision of the Board of Education to be based exclusively on evidence produced before the hearing panel. *Kinsella v. Board of Education,* 402 F.Supp. 1155 at 1156 (W.D.N.Y. 1975) (*Kinsella* II). Neither this holding nor its rationale consider *Morgan* I or any of its progeny. The statute had also been construed to mean that the hearing panel's recommendations were merely advisory and in no way conclusory on the employing board. None of these conditions are present in the instant case. Ohio Rev.Code § 3319.16 explicitly states that if the hearing is before the referee, the board may vote to accept or reject the referee's recommendation after consideration of the referee's report, which shall be based only on evidence concerning the charges against the teacher, and that any order of termination should state the grounds therefor.

Plaintiff next argues on the basis of *Goldberg v. Kelly,* 397 U.S. 254, 259, 90 S.Ct. 1011, 1015, 25 L.Ed.2d 287 (1970) that he has a constitutional right to appear before the board in person and present his arguments.

The primary issue in *Goldberg* was whether due process required an evidentiary hearing prior to the termination of welfare benefits. The Court held that under the circumstances, where a person could be deprived of his only means of support, due process did require a pre-termination hearing which need not take the form of a judicial or quasi-judicial trial. Such a hearing could be constitutionally limited to the minimum procedural safeguards, adopted to the particular characteristics of welfare recipients.

The court started from the "fundamental requisite of due process" which is the opportunity to be heard at a meaningful time and in a meaningful manner. *Goldberg*, 397 U.S. at 267, 90 S.Ct. at 1020. In the unique context of termination of welfare benefits, these principles were held to require timely and adequate notice detailing the reasons for the proposed termination and an effective opportunity to defend by confronting adverse witnesses and by presenting arguments and evidence in person. The court found that the existing procedures, which did not permit welfare recipients to appear personally with or without counsel before the official who finally determined continued eligibility, or to present evidence orally to that official or to confront or cross-examine witnesses, were constitutionally inadequate. However, the personal appearance before the decisionmaker in *Goldberg* was constitutionally required under the premise that "[t]he opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard." *Goldberg*, 397 U.S. at 268–269, 90 S.Ct. at 1020.

Thus, as noted by the Court in *Mathews v. Eldridge*, 424 U.S. 319, 345, 96 S.Ct. 893, 906, 47 L.Ed.2d 18 (1975), where the court held that discontinuance of disability benefits was not a context in which due process required a prior hearing because the potential value of an evidentiary hearing or even oral presentation to the decisionmaker was substantially less than in *Goldberg*:

> The decision in *Goldberg* also was based on the Court's conclusion that written submissions were an inadequate substitute for oral presentation because they did not provide an effective means for the recipient to communicate his case to the decisionmaker. Written submissions were viewed as an unrealistic option, for most recipients lacked the "educational attainment necessary to write effectively" and could not afford professional assistance.

*Mathews*, 424 U.S. at 345, 96 S.Ct. at 907.

In making its decision that a hearing was not required prior to discontinuance or termination of disability benefits, the *Mathews* court set up the criteria for the determination of the parameters of due process in a given circumstance. *Cf. Frumkin v. Board of Trustees, Kent State University*, 626 F.2d 19 (6th Cir. 1980). However, the *Mathews* court even cautioned against the application of these criteria:

> But more is implicated in cases of this type than *ad hoc* weighing of fiscal and administrative burdens against the particular category of claimants. The ultimate balance involves a determination as to when, under our constitutional system, judicial type procedures must be imposed upon administrative action to assure fairness. We reiterate the wise admonishment of Mr. Justice Frankfurter that differences in the origin and function of administrative agencies "preclude wholesale transplantation of the rules of procedure, trial, and review which have evolved from the history and experience of the courts. . . ." The judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances. *The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and an opportunity to meet it. . . ." All that is necessary is that the procedures be tailored, in light of the decision to be made, to "the capacities and circumstances of those who are to be heard, . . ." to insure that they are given a meaningful opportunity to present their case.* [citations omitted] [emphasis added]

*Mathews,* 424 U.S. at 348, 349, 96 S.Ct. at 909.

In the instant case, of course, Jones had the opportunity to appear personally with counsel for a full, trial-type evidentiary hearing either before the Board, the final decisionmaker, or a neutral hearing officer, prior to the termination of his employment. Jones appeared before the referee by his own choice. The case law is clear that such a hearing officer may report to the final decisionmaker on the evidence received, and the decisionmaker may base his decision on the referee's report. The additional procedural safeguard which Jones asserts he is due is an opportunity to make an oral or written objection to the hearing officer's decision; in essence, a procedure similar to that of a judicial appeal from the decision of the trial court as to findings of fact.

The only case directly on point as to the constitutional requirement of such a procedure is *Bates v. Sponberg,* 547 F.2d 325 (6th Cir. 1976), in which the Sixth Circuit held that the Due Process Clause of the United States Constitution was not violated when a teacher who faced termination of his contract for cause was not permitted to object, either in writing or orally, before the final decisionmaker. Interestingly, Professor Kenneth Culp Davis emphatically supports the position that due process does not require the opportunity to present oral argument in an administrative proceeding. Davis, *Administrative Law Treatise,* 2d ed. Vol. 2 (1979).

■ There is language in *Morgan* I, *Morgan* II, *Morgan v. U. S.,* 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938) and some of the cases decided under the Administrative Procedure Act following them which suggest that oral or written argument should be allowed and considered by the decisionmaker where the matter was heard by a hearing examiner. However, as noted in *Bates v. Sponberg,* 547 F.2d 325, these cases deal with rules of administrative, not constitutional law. What may be required by administrative law or rules of accepted judicial administration is not constitutionally required. *Bates v. Sponberg, Utica Mutual*

*Insurance Co. v. Vincent,* 375 F.2d 129 (2d Cir. 1967); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1975); *Yaretsky v. Blum,* 629 F.2d 817 (2d Cir. 1980).

What is required, under the criteria of *Mathews v. Eldridge,* are procedures that will insure fairness in administrative action. *Id.* 424 U.S. at 348, 96 S.Ct. at 909. Using the criteria of *Mathews* we conclude that the present procedures are fair, and the additional procedures demanded by Jones are unnecessary to insure minimal constitutional due process.

■ Jones' interest in his teaching job is a constitutionally protected property interest which will be affected by the board's action. The board, in turn, has an interest in insuring quality education through the use of qualified and responsible teachers for the students in its school district. A corollary to that interest is the ability to discharge efficiently those teachers who for good reason are not competent or willing to promote the Board's educational goals. The numerous procedural safeguards with which a public school teacher facing termination has been provided in a termination proceeding under Ohio Rev.Code § 3319.16 have already been detailed. All of the procedures in the statute, including the provision for plenary review by a common pleas court, ensure that there will be small margin for unfairness which will minimize chances for error in a termination proceeding. Clearly, a common pleas court is a more competent forum for a review of the sufficiency of the evidence than a school board. The board's decision, that the referee's findings constitute sufficient cause to terminate a teacher, is an act within their particular expertise, which, however, is also subject to review if not supported or warranted by the evidence adduced at the hearing. *See* for example, *Hale v. Board of Education,* 13 Ohio St.2d 92, 234 N.E.2d 583 (1968). Thus, it is doubtful if Jones' proposed procedural safeguard of interposing his objections between the referee's findings of fact and the board's ultimate decision on the "legal" consequences of that act

would be of great value in lessening the already minimal risk of an unfair termination.

Jones, in fact, was accorded a procedure by § 3319.16 which allowed him to choose an impartial decisionmaker in the form of a referee. This option was the essential procedure upon which the *Whitsel* court determined that § 3319.16 was constitutional. Such procedures as those set forth in § 3319.16, which assure a right to a full and unbiased evidentiary hearing as well as subsequent judicial review before a termination decision becomes final, are considered sufficient to assure fair consideration of a litigant's claims. *Mathews v. Eldridge*, 424 U.S. at 348, 96 S.Ct. at 909. *Cf. Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971); *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976).

The additional procedural safeguards requested by Jones would be of little, if any, value in minimizing any risk of an unfair deprivation of Jones' property interest in his continuing teaching contract. In fact, under similar factual situations, courts have held that such procedures are not constitutionally required. *Perry v. Sinderman; Bates v. Sponberg.*

Accordingly, this Court finds that Ohio Rev.Code § 3319.16 is constitutional in that the procedures it details provide a teacher faced with a termination proceeding sufficient due process to ensure the teacher a meaningful hearing. Jones' prayer for relief is DENIED.

SO ORDERED.