**Gary WHITSEL, Plaintiff-Appellant,**

**v.**

**SOUTHEAST LOCAL SCHOOL DISTRICT et al., Defendants-Appellees.**

**No. 72–1665.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 30, 1972.

Decided Sept. 25, 1973.

Richard P. McLaughlin, McLaughlin, DiBlasio & Harshman, Youngstown, Ohio, for plaintiff-appellant.

R. J. Kane, Portage County Pros. Atty., Ralph J. Stemberger, Asst. Prosecutor, Ravenna, Ohio, Joseph G. Schneider, Cleveland, Ohio, Bernard J. Wilkes Youngstown, Ohio, for defendants-appellees.

Before CELEBREZZE, McCREE, and LIVELY, Circuit Judges.

McCREE, Circuit Judge.

Plaintiff, a continuing-contract teacher in the Southeast Local School District of Ravenna, Ohio, appeals from a judgment determining that he was not discharged because of the exercise of activity protected by the First Amendment and that due process was not offended by the dismissal procedures employed. We affirm.

Gary Whitsel, the possessor of a Bachelor of Science degree and a Master of Arts degree in Sociology and Anthropology from Kent State University, had taught for seven years in the public schools of Ohio prior to his discharge in 1970. The last five were spent in the defendant school system, and in the last two of these years he taught history and a "Great Issues" course at Southeast High School. He was awarded a continuing contract on April 27, 1970, a few weeks before the events that precipitated this litigation.

On Monday, May 4, 1970, Whitsel was the supervisor of a Kent State student teacher named Goldstein, who requested permission to leave Southeast High School before completing his teaching assignments in order to attend an anti-war rally at the Kent State campus. Whitsel granted permission, and Goldstein left without informing the principal or assistant principal and obtaining their approval, as required by established procedures. As events transpired, this was the day the Ohio National Guard was summoned to quell the demonstration on the Kent State campus against the extension of the Vietnam War into Cambodia, and four students were shot to death. Goldstein and another student teacher became tear gas casualties shortly after their arrival on the campus and they retired to a dormitory without observing much of the day's activities.

The two student teachers were summarily dismissed by defendant school board the next day for failure to have secured the approval of their Kent State coordinators and the Southeast principal before leaving the high school. Goldstein informed Whitsel of this action by telephone the same evening.

On May 6, the next day, about forty students gathered at the principal's office as soon as school opened and sought an explanation for the dismissal of the two popular student teachers. The assistant principal directed the group to the gymnasium to await the principal's arrival. When the principal's explanation failed to satisfy them, the students, their numbers now augmented to about four hundred, demanded the presence and explanation of the superintendent of schools. Whitsel left his class to investigate the commotion he had heard and, after advising Goldstein of the student demonstration, joined the assembly in the gymnasium.

The superintendent explained why Goldstein had been dismissed and instructed the students to return to their classes because the assembly was unauthorized. The students did not obey and asked to hear from Whitsel, who addressed them and said that he had given Goldstein permission to leave. He also suggested that there were political implications in the dismissal and that he was familiar with a Supreme Court case reported in a National Education Association periodical that caused him to believe that Goldstein and the other student teacher might have "a case for the American Civil Liberties Union or the Ohio Civil Rights Union." Goldstein, who returned to the school without first reporting to the office as required by regulation, entered the gymnasium to student applause while Whitsel was speaking but departed when he learned that the Sheriff had been called to help terminate the assembly. Other teachers and administrators then spoke to the students, who remained in the gymnasium until the school authorities closed the school for the day and sent them home. The Southeast Local schools remained closed from May 6, 1970, until May 12.

On May 11, the school board convened a private meeting shortly before a special meeting with all teachers of the district. The board members discussed ". . . what was going to be said that afternoon, and what steps we were going to take to make sure there was order, and we could finish the year cooperatively and smoothly." Three teachers who were present at the May 5 assemblage in the gymnasium were identified as coconspirators responsible for the episode: Mr. Galmish, Miss Sterrett, and Mr. Whitsel. Subsequently, the teachers in attendance at the special meeting were advised of the decision to charge these three with responsibility for the unauthorized assembly.

After a month-long investigation, Whitsel was notified by the board of education on June 18, 1970, of its intention to terminate his contract on the grounds of " . . . gross inefficiency and willful and persistent violations of reasonable regulations of the board of education and other good and just cause."[1] He was suspended on Septem-

1. The full notice read as follows:

NOTICE OF INTENTION TO CONSIDER TERMINATION
OF CONTRACT

Board of Education of
Southeast Local School District
Ravenna, Ohio
June 18, 1970

To Mr. Gary Whitsel
 7774 Newton Falls Road
 Ravenna, Ohio

This is to advise you that it is the intention of the board of education to consider the termination of your current continuing contract on the grounds of gross inefficiency and willful and persistent violations of reasonable regulations of the board of education and other good and just cause.

Such ground for termination of your contract is based on the following conduct on your part, in the matter and on the occasions, herein set forth in detail: On May 6, 1970 you were directly insubordinate to the superintendent of schools and in violation of the board adopted policy against student school disruptions passed January 12, 1970.

On the day of the school disruption, after Superintendent R. E. Nace had announced that the students should choose a small committee to discuss their problems and the rest return to class, you (Mr. Gary Whitsel) immediately proceeded to speak to the students saying that you had contacted the American Civil Liberties Union and that the student teachers were within their rights, just as the students were within their rights, to be questioning at this time. Both parts of the previous statement served to further inflame the situation since; (1) the disturbance was over the disciplining of the student teachers and (2) telling the students they were within their rights to be there questioning was in direct contrast to, and insubordinate to, the immediate previous remarks of the Superintendent, Mr. R. E. Nace.

Your inability to keep your students in the classroom during this disturbance further indicates your inefficiency in handling school discipline. This inefficiency had been discussed with you on a number of occasions by your superiors and, in fact, led to a probationary one year contract for the 1969–70 school year. In addition, on a number of occasions during your teaching experiences at Southeast Schools it was necessary for the administration to remind you that remarks against the government and government policies should not be made in a manner that promoted your own personal political attitudes. There are strong indications that these words of caution were not followed and that, in fact, you permitted a student teacher to flagrantly violate this administrative and board request. Your past record of involvement in events of the nature herein described is a strong indication of your unwillingness to conform to administrative and board's requests. Attached, hereto, please find a copy of the board adopted policy passed January 12, 1970.

/s/ THELMA M. LEE
Thelma M. Lee, Clerk
Southeast Board of Education

ber 2, 1970, and was accorded a hearing pursuant to the statutory provision for

2. The statute provides:
§ *3319.16 Termination of contract by board of education.*

The contract of a teacher may not be terminated except for gross inefficiency or immorality; for willful and persistent violations of reasonable regulations of the board of education; or for other good and just cause. Before terminating any contract, the employing board shall furnish the teacher a written notice signed by its clerk of its intention to consider the termination of his contract with full specification of the grounds for such consideration. Such board shall not proceed with formal action to terminate the contract until after the tenth day after receipt of such notice by the teacher. Within ten days after receipt of such notice from the clerk of the board, the teacher may file with the clerk a written demand for a hearing before the board or before a referee, and the board shall set a time for the hearing which shall be within thirty days from the date of receipt of the written demand, and the clerk shall give the teacher at least twenty days' notice in writing of the time and place of such hearing. If a referee is demanded by either the teacher or board, the clerk shall also give twenty days' notice to the superintendent of public instruction. No hearing shall be held during the summer vacation without the teacher's consent. Such hearing shall be private unless the teacher requests a public hearing. The hearing shall be conducted by a referee appointed pursuant to section 3319.161 [3319.16.1] of the Revised Code, if demanded; otherwise, it shall be conducted by a majority of the members of the board and shall be confined to the grounds given for such termination. The board shall provide for a complete stenographic record of the proceedings, a copy of such record to be furnished to the teacher. The board may suspend a teacher pending final action to terminate his contract if, in its judgment, the character of the charges warrants such action.

Both parties may be present at such hearing, be represented by counsel, require witnesses to be under oath, cross-examine witnesses, take a record of the proceedings, and require the presence of witnesses in their behalf upon subpoena to be issued by the clerk of the board. In case of the failure of any person to comply with a subpoena, a common pleas judge of the county in which the person resides, upon application of any interested party, shall compel attendance of the person by at-

contract termination. Ohio Rev.Code § 3319.16.[2] Whitsel did not demand that

tachment proceedings as for contempt. Any member of the board or the referee may administer oaths to witnesses. After a hearing by a referee, the referee shall file his report within ten days after the termination of the hearing. After consideration of the referee's report, the board by a majority vote may accept or reject the referee's recommendation on the termination of the teacher's contract. After a hearing by the board, the board by majority vote may enter its determination upon its minutes. Any order of termination of a contract shall state the grounds for termination. If the decision, after hearing, is against termination of the contract, the charges and the record of the hearing shall be physically expunged from the minutes, and if the teacher has suffered any loss of salary by reason of being suspended, he shall be paid his full salary for the period of such suspension.

Any teacher affected by an order of termination of contract may appeal to the court of common pleas of the county in which the school is located within thirty days after receipt of notice of the entry of such order. Such appeal shall be an original action in said court and shall be commenced by the filing of a petition against such board, in which petition the facts shall be alleged upon which the teacher relies for a reversal or modification of such order of termination of contract. Upon service or waiver of summons in said appeal, such board shall immediately transmit to the clerk of said court for filing a transcript of the original papers filed with the board, a certified copy of the minutes of the board into which the termination finding was entered, and a certified transcript of all evidence adduced at the hearing or hearings before such board or a certified transcript of all evidence adduced at the hearing or hearings before the referee, whereupon the cause shall be at issue without further pleading and shall be advanced and heard without delay. · The court shall examine the transcript and record of the hearing and shall hold such additional hearings as it deems advisable, at which it may consider other evidence in addition to such transcript and record.

Upon final hearing, the court shall grant or deny the relief prayed for in the petition as may be proper in accordance with the evidence adduced in the hearing. Such an action is a special proceeding within the purview of section 2505.02 of the Revised Code and either the teacher or the board may appeal therefrom.

the hearing be conducted by a referee,[3] and on January 11, 1971, the board terminated his contract for "persistent and willful violations of reasonable regulations of the Southeast Board of Education and other good and just cause."

Whitsel filed a timely appeal in the Court of Common Pleas of Portage County,[4] but, inexplicably, he later withdrew the suit and initiated this action under 28 U.S.C. §§ 1331, 1343(3), 1343(4), and 42 U.S.C. § 1983. His complaint asserted that the incident of May 6 merely afforded defendants a pretext for terminating his contract and that the true reason was that he had expressed controversial and unpopular opinions and ideas on political, social, and religious subjects. He averred that his termination for these reasons violated his rights to freedom of speech, assembly, association, and religion as guaranteed by the First and Fourteenth Amendments. He also asserted that he had been denied procedural due process in several respects because, *inter alia*, the notice of the charge against him was inadequate, the findings of wrongdoing were vague and imprecise, and the hearing was unfair because the board was both accuser and trier of fact. Finally, he claimed that he was denied equal protection of the laws because the board had not taken similar disciplinary action against other teachers who participated in the May 6 assembly.

After a nonjury trial on the merits, the district court dismissed the complaint. The court determined that "[t]here is a total absence of evidence bearing upon any personal beliefs, attitudes and religious views of the plaintiff and their acceptance or non-acceptance in the community as a whole, or his activity and participation in the local teachers' association." The court also found that there was evidence supporting the board's dismissal order and that there was no denial of procedural due process. And, it determined that board action against Miss Sterrett, another teacher who participated in the May 6 assembly, and her subsequent resignation refuted the claim of discrimination asserted to constitute a denial of equal protection of the laws.

At the outset, we observe, as did the district court, that an action under the civil rights statutes is not a plenary review of a challenged state administrative procedure. The Ohio statutes afforded Whitsel an appeal to the Common Pleas Court of Portage County, and that court has jurisdiction to review the

---

In any court action the board may utilize the services of the prosecuting attorney or city solicitor as authorized by section 3313.35 of the Revised Code, or may employ other legal counsel.

3. The referee provided under Ohio Rev.Code § 3319.16 (*see* note 2, *supra*) is appointed according to the procedure set out in Ohio Rev.Code § 3319.16.1:

For the purpose of providing referees for the hearings required by section 3319.16 of the Revised Code, the superintendent of public instruction shall compile a list of resident electors from names that he shall solicit annually from the state bar association.

Upon receipt of notice that a referee has been demanded by a teacher or by a board of education, the superintendent of public instruction shall immediately designate three persons from such list, from whom the referee to hear the matter shall be chosen, and he shall immediately notify the designees, the teacher, and the board of the school district involved. If within five days of receipt of the notice, the teacher and board are unable to select a mutually agreeable designee to serve as referee, the superintendent of public instruction shall appoint one of the three designees to serve as referee. The appointment of the referee shall be entered in the minutes of the board. The referee appointed shall be paid his usual and customary fee for attending the hearing which shall be paid from the school district general fund upon vouchers approved by the superintendent of public instruction and presented to the clerk of the district. No referee shall be a member of, an employee of, or teacher employed by the board of education nor related to any such person by consanguinity or marriage. No person shall be appointed to hear more than two contract termination cases in any school year.

4. *See* note 2 *supra*.

administrative transcript, to hold additional hearings, to take other evidence, and to grant such relief as may be proper.[5] Whitsel initiated such an action but, for reasons obscure to us, abandoned it for the more restricted procedures afforded him here. Also, for reasons we are unable to comprehend, as the district court observed, "[a]t the outset of the trial of this cause, plaintiff voluntarily limited the issues to those arising from the events of May 4, 5 and 6, 1970." Accordingly, appellant introduced no evidence of his classroom expression or advocacy of ideas or opinions incompatible with official Southeast Local School District views. The parties stipulated at trial that Whitsel ". . . is an efficient and capable teacher . . . whose teaching record prior to May 6, 1970, discloses no evidence that would support the charges contained in the June 18, 1970 notice of intention to terminate his contract." And the transcript of the dismissal hearing before the board does not contain any evidence of appellant's classroom performance.

Accordingly, we focus, as did the district court, on Whitsel's May 6 activities to determine whether his dismissal was for conduct protected by the First Amendment. He spoke to the assembled students after the principal and superintendent had vainly ordered them to return to their classes. He did not urge them to obey the directions of his superiors. Instead, he told them that there might be political overtones to Goldstein's dismissal and that it might be a proper concern of the American Civil Liberties Union and the Ohio Civil Rights Union. His remarks encouraged

disobedience to the directions given to the students by his superiors to return to classes. As a consequence, he was terminated not only for what he said but also for what he did not say. A regulation [6] required him to assist in quelling a student school disruption. Although he disclaimed specific knowledge of the regulation, it had been adopted in January 1970 and had been posted on the teachers' bulletin board. The notice of intention to terminate his contract charged him with violation of this regulation and the board found him guilty of this infraction. The fact that he made statements that by themselves, in a different context, might have constitutional protection does not insulate him from sanctions for noncompliance with a board regulation.

And, quite apart from the regulation, the statements Whitsel voiced are outside the protection of the First Amendment. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1967), upon which appellant relies, distinguished a teacher's writing of a letter to the editor from statements made by a teacher that ". . . either impeded the teacher's proper performance of his daily duties in the classroom or . . . interfered with the regular operation of the schools generally." 391 U.S. at 572, 88 S.Ct. at 1737. See Gieringer v. Center School District No. 58, 477 F.2d 1164, 1167 (8th Cir. 1973); see also Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1968). Here, appellant's remarks were not made in his capacity as a concerned citizen but in the capaci-

5. See note 2 supra.

6. The regulation provided:
STUDENT SCHOOL DISRUPTION POLICY—The Southeast School Board is opposed to loss of scheduled school time resulting from student participation in politically oriented activities or other activities which result in violation of public school attendance laws in the State of Ohio.
The disruption of classes by student participants in politically oriented activities or any activity that is not sanctioned by the proper

school authorities is an infringement upon the rights of non-participants. This interference may create disciplinary problems or may interfere with others' performance of their school work.
The Board of Education authorizes the acting supervisor of the building to take whatever steps necessary to maintain control of the building and provide for the safety of the students.
In any incident where this may occur disciplinary action will be administered to the participants by the school authorities.

ty of a school teacher during school hours on school property. Also, they were not made during an authorized assembly where the expression of ideas on issues that permitted different views was appropriate. Instead, he spoke at an unauthorized assembly of students on school property after his principal and superintendent had declared the meeting unlawful and urged the insubordinate students to abandon the proscribed gathering and return to classes. His words in this factual context impliedly countermanded the directions of his superiors and, thus construed, went beyond the mere advocacy of ideas and counselled a course of action. And the course of action impliedly counselled was diametrically opposed to the one he should have urged in obedience to the school regulation that he was required to implement and to the action called for by his superiors. *Cf.* Hetrick v. Martin, 480 F.2d 705 (6th Cir. 1973).

■ We determine that the record supports the holding of the district court that, under these circumstances, Whitsel was not terminated for the advocacy of ideas but for insubordination. Whether the sanction of termination was too severe is a question not properly before us. The statutes of the State of Ohio gave appellant a forum in which to litigate that question as well as other questions concerning the commitment of any infraction and the propriety of any sanction. Whitsel initially pursued that course but later abandoned it. We cannot substitute our judgment for that of the school board so long as the board did not infringe any of appellant's constitutionally protected rights.

■ We recognize that whenever a violation of First Amendment rights is alleged, the asserted reasons for dismissal must be carefully examined to see if they are mere pretexts for reasons prohibited by the Constitution. However, by stipulating not to consider his pre-May 6 conduct, appellant effectively foreclosed such an inquiry. And, as we

have held, a balance must be struck between a claim of First Amendment protection and the need for orderly administration of a school system. Limiting our inquiry to the May 1970 events, we cannot say on this record that there was not lawful, adequate cause for Whitsel's dismissal for violation of a regulation of the board.

■■ Appellant's claim of denial of procedural due process requires less extensive discussion. Whitsel is correct in his contention that his continuing contract could not have been terminated without a hearing in which he would be informed of the grounds for dismissal and be given an opportunity to challenge their sufficiency. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956). The pertinent Ohio statute specifies the grounds for termination of a continuing contract, requires written notice and time to prepare a defense, and provides the option of requesting a referee to conduct the hearing instead of the school board, a stenographic record, the right of confrontation, the right to counsel, and the right to subpoena witnesses. It also provides for plenary review of an order of termination in the state courts.[7] Tested by every standard ever enunciated, these rights constitute procedural due process in a contract termination proceeding. *See* Perry v. Sindermann, *supra.*

■ We also determine that appellant's claim that he was denied equal protection of the laws because other teachers who spoke at the assembly were not disciplined was properly decided by the district court. Miss Sterrett and Mr. Galmish, both of whom spoke in implied contradiction of the order to the students to return to class, were the objects of disciplinary procedures but resigned before final action was taken. We therefore find no substance to the claim of invidiously selective prosecution.

---

7. *See* note 2 *supra.*

There are disquieting overtones to this case. The atmosphere of Southeast High School appears frighteningly oppressive and the board appears excessively authoritarian and vindictive. However, the appropriateness of the policies and practices of the board is not before us. We are restricted to the issues within our jurisdiction as framed by the parties and to the evidence in the record.

The judgment of the district court is affirmed.