· WHEELER, APPELLANT, *v.*
MARIEMONT DISTRICT BOARD OF
EDUCATION, APPELLEE.

(No. C-820578—Decided
September 2, 1983.)

*Messrs. Biegel, Kirkland & Berger*
and *Mr. James R. Kirkland,* for appellant.

*Mr. George E. Roberts III,* for appellee.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County. Appellant is one of forty-eight teachers who have appealed in separate cases from judgments affirming the termination of their continuing or limited contracts with appellee Mariemont District Board of Education (the "board") under R.C. 3319.16 and 3319.161.

Appellant was a member of the Mariemont District Education Association ("MDEA"), the executive committee of which voted on January 19, 1981 to authorize a concerted job action. Negotiations between MDEA and the board were at a standstill. Despite a warning sent to all teachers on January 21, 1981 by the Superintendent of the Mariemont City School District ("Mariemont Superintendent") that failure to report

for work and perform teaching duties would constitute "other good and just cause" for termination, the work stoppage began on Monday, January 26, 1981.

It is uncontroverted that appellant participated in the job action and did not report to work or perform normal teaching duties on any of the five days ending Friday, January 30, 1981. Appellant had no excuse or justification for this action other than the desire to honor the work stoppage vote and the picket lines.

On January 27, 1981, at a regular meeting (after voting to discontinue its contribution for fringe benefits provided to the teachers withholding services and to "non-renew" the limited contracts of fourteen of these teachers), the board adopted the following resolution:

"RESOLVED, that all teachers who have withheld services are to report back to their work assignments and fulfill their individual contract obligations with the Mariemont City School District. *Failure to do so by the start of school on Friday morning, January 30, 1981, will result in the termination of contracts of those individuals withholding services.*" (Emphasis added.)

On January 29, 1981, the Mariemont Superintendent sent a telegram urging each teacher to "return to your classroom on January 30, 1981 and assume your teaching duties," with the further remark that the board would rescind the "non-renewal" of those limited contract teachers who "return to work on January 30, 1981." Three teachers reported to school that day: Tom Crosby at the start of school, Larry Holtkamp about ten minutes later, and John Hubbard, during the afternoon but before the end of school. These three were allowed to return to their teaching positions and were not terminated. The Mariemont Superintendent testified that if other teachers had reported during school hours on that Friday, they would have received the same treatment.

On January 30, 1981, the board adopted a resolution declaring its intention to consider terminating thirty-six continuing contracts and fourteen limited teaching contracts, including appellant's, "for good and just cause, and more specifically:

"1. Failure to report for work and perform his/her teaching duties on January 26, 1981;

"2. Failure to report for work and perform his/her teaching duties on January 27, 1981;

"3. Failure to report for work and perform his/her teaching duties on January 28, 1981;

"4. Failure to report for work and perform his/her teaching duties on January 29, 1981;

"5. Failure to report for work and perform his/her teaching duties on January 30, 1981;

"6. Failure to report for duty on each of the days listed above for the purpose of inducing and influencing a change in your compensation and/or working conditions of employment in violation of Ohio law."

These specifications or grounds for termination remained uniform throughout all proceedings in all cases, including appellant's.

On February 13, 1981, appellant, together with the other forty-nine teachers subject to termination, demanded a public hearing before a referee pursuant to R.C. 3319.16. Complying with the mandates of that section, the board set times for each required referee hearing, all within the period from March 7, 1981, to March 12, 1981, and notified the Ohio Superintendent of Public Instruction ("Ohio Superintendent") of the necessity for the designation of three possible referees for each hearing.

R.C. 3319.161 provides that the referee shall be taken from three persons designated by the Ohio Superintendent, either chosen by mutual agreement of the teacher and the board or appointed by the Ohio Superintendent if they are unable to

agree. The statute further requires that these persons shall be "resident electors" and named in a list solicited annually from the state bar association, among other requirements. The list furnished in 1981 by the state bar association was the Ohio Legal Directory, which contains the names of all lawyers practicing in Ohio, whether or not members of the state or any local bar association.

The responsibility to find three potential referees for each teacher was delegated by the Ohio Superintendent to his department attorney, who set out to select experienced trial attorneys from Hamilton County who would meet all statutory requirements. He obtained from the Arbitration Coordinator of the Hamilton County Court of Common Pleas a list of about one hundred sixty attorneys that was used by that court to select chairmen for arbitrations under Rule 24 of the court's local rules of practice. From this list, the department attorney selected, through personal contact by telephone, enough attorneys who met the statutory requirements and were willing to serve so that none was designated for more than two cases. While this process was proceeding, the board informed the Ohio Superintendent informally that it would not agree on any of the designees and would require the Ohio Superintendent to make all appointments.

By letters uniformly dated February 24, 1981, the Ohio Superintendent notified each designee, each teacher and the board of the three designees. The first two designees were identical in every case, but the third was an attorney who had been contacted and screened by the department attorney. In each case, including appellant's, this person was the attorney appointed by the Ohio Superintendent on March 2, 1981, inasmuch as the teacher and the board were "unable to agree."

The entire procedure, however, was rescinded on March 4, 1981, when it was discovered that the first uniformly named designee was no longer a resident of the state. Fifty new designation letters were prepared on March 4, 1981, one for each case, including appellant's, each with different attorneys named as the first and the second designee. We find nothing in the record to demonstrate that the two persons named in appellant's case failed to meet the statutory requirements. On March 5, 1981, the board informed the Ohio Superintendent by telegram and memorandum that it would not agree on any designee, but appellant's counsel asked for a full five days to consider the designations. On March 5, 1981, relying on the board's consistent refusal to agree on any choice of referee and aware of the hearings scheduled to begin on March 7, 1981, the Ohio Superintendent formally appointed the third designee on each list, including appellant's. Fifty copies of these notifications were delivered by hand to the board's representative on March 5, 1981, and to the teachers' attorney on March 6, 1981. The first referee hearings began March 7, 1981, as scheduled.

The record discloses that appellant's counsel advised the referee at the beginning of the hearing that interrogatories had been served on the board, and that full discovery had not been afforded. The referee ruled that the Rules of Civil Procedure do not apply under R.C. 3319.16.

During the hearing before the referee, appellant made no objection to the method of selection or the method of appointment of the referee. The first time this point was raised was before the court of common pleas. We find nothing in the record to indicate that appellant's referee failed to satisfy the statutory requirements.

After the hearing, the referee submitted a written report to the board and the teacher, and subsequently the board held an individual hearing in appellant's case, as in all cases, affording appellant the opportunity to present any comments or evidence or anything appellant might wish, prior to the board's action on ter-

mination of the contract. Appellant's counsel presented an oral argument, mentioning appellant's satisfactory performance as a teacher. The board then voted unanimously to terminate appellant's contract for the six specific reasons set forth in the board's original notification letter.

Appellant and forty-eight other terminated teachers appealed to the court of common pleas under R.C. 3319.16. The case was submitted to the court on the basis of a full record of the proceedings (including transcripts) before the referee and the board, with the addition of three depositions admitted by agreement of the parties. (These depositions had to do with the method of selection and appointment of the referees.) The court affirmed the termination, rendering judgment for the board. In an opinion uniformly filed in all cases, including appellant's, the court made the following remark:

"This court at the outset would note that the issues before it are legal ones and the court cannot substitute its judgment on the facts and ultimate decision of each case for that of the School Board."

Appellant and forty-seven other teachers appealed to this court, presenting multiple uniform assignments of error.

The first assignment of error is:

"The Trial Court erred in not reversing the decision of the School Board in terminating Plaintiff-Appellant's contract based on the failure to comply with Ohio R.C. 3319.161, the referee selection process."

In pertinent part, R.C. 3319.161 provides:

"For the purpose of providing referees for the hearing required by section 3319.16 of the Revised Code, the superintendent of public instruction shall compile a list of resident electors from names that he shall solicit annually from the state bar association.

"Upon receipt of notice that a referee has been demanded by a teacher or by a board of education, the superintendent of public instruction shall immediately designate three persons from such list, from whom the referee to hear the matter shall be chosen, and he shall immediately notify the designees, the teacher, and the board of the school district involved. If within five days of receipt of the notice, the teacher and board are unable to select a mutually agreeable designee to serve as referee, the superintendent of public instruction shall appoint one of the three designees to serve as referee."

Appellant submits that, in appointing a referee to conduct the hearing required by R.C. 3319.16 before the expiration of the five-day period after the March 4, 1981 letter, as specified in R.C. 3319.161, the Ohio Superintendent denied appellant's right to the selection of a fair and impartial referee.

Primarily, appellant predicates the assertion of error on the contention that the unilateral decision of the Ohio Superintendent to appoint a referee after being advised by the board that it would not agree upon the selection of any of the designees, deprived appellant of the opportunity to consider potential referees and to reach an appropriate decision.

Secondarily, appellant argues that the Ohio Superintendent made no effort to determine the fitness, willingness or possible conflict of interest of any of the designees and in so doing ignored the further directive within R.C. 3319.161 that:

"No referee shall be a member of, an employee of, or teacher employed by the board of education nor related to any such person by consanguinity or marriage. No person shall be appointed to hear more than two contract termination cases in any school year."

Coupled with this argument is one advancing the claim that the list from which the referees were selected had not been compiled properly so that it contained names of individuals who were not resident electors and members of the Ohio State Bar Association.

Finally, as a background to the fore-

going, appellant contends that R.C. 3319.161 is a preventative statute to be followed scrupulously and to be construed liberally in favor of a teacher and strictly against a board of education. Resultantly, appellant submits, the court erred in concluding that the Ohio Superintendent had complied substantially with the statute and in finding that appellant had waived objections to the selection process.

We are unpersuaded by any of appellant's arguments and find that the assignment of error is not well-taken.

By its terms, R.C. 3319.161 contemplates that there be an opportunity for agreement by both the teacher and the board of education on the appointment of the referee to conduct the hearing required by R.C. 3319.16. The failure to select a mutually agreeable designee to serve as referee "within five days" of receipt of notice of demand by either the teacher or the board requires action by the Superintendent of Public Instruction to make the appointment unilaterally. Here, the Ohio Superintendent was notified by the appellee promptly after the appellant had requested a hearing before a referee, that it would not enter into the mutual agreement specified by the statute. We know of no reason why the appellee could not adopt this posture, the purpose of which was to trigger the duty of the Ohio Superintendent to make the appointment himself. Under such circumstance, there was no purpose to be served and no requirement that the Ohio Superintendent delay for any additional period of time the action required of him by law to select a referee. We hold, thus, that R.C. 3319.161 establishes only the *maximum* time which can elapse before the Ohio Superintendent must appoint a referee. In this case the Ohio Superintendent acted in accordance with the statute to fulfill his obligation.[1] It follows then that no deficiency or fault attended his decision to perform his duty before five days had elapsed, where under the factual situation demonstrated by the record such action did not deny appellant any right provided by the statute.

Proceeding to the balance of appellant's issues under this assignment of error, we find within the record before the referee nothing to support appellant's assertion that the Ohio Superintendent failed to investigate the qualifications of the referee appointed to hear the dispute, or that the procedure followed to insure the appointment of a competent, fair and impartial referee violated his duty under R.C. 3319.161, or, alternately, resulted in a denial of due process. Appellant has not directed us to specific parts of the record which would, arguably, support the argument, and our examination of it, as noted, *supra,* has failed to produce a ground upon which prejudice could be predicated.[2]

We note, additionally, that the appellant was afforded and declined the oppor-

---

[1] In view of the fact that some fifty teachers employed by the appellee were served simultaneously with notice of the intention to consider termination of their contracts and that those employees notified appellee on the same date, February 12, 1981, of their individual requests for a hearing before a referee, the limitations of time imposed by R.C. 3319.16 within which panels had to be selected and the hearings set presented an obvious exigent circumstance to the Ohio Superintendent which, so far as the record reveals, was dealt with expeditiously and appropriately.

[2] The board submits that, in any event, the first assignment of error should be overruled because appellant raised an objection to the selection process for the first time when the matter was reviewed by the court of common pleas. While there is substance to the contention that appellant's objection was not timely made, *i.e.,* at a juncture when any justified complaints of acts of commission or omission could have been adjusted, we have elected to dispose of the assignment on the grounds set forth in the body of this decision.

tunity to augment the presentation of the merits of the cause, including matters relevant to the instant issue, when it came before the board upon the recommendations of the referee and before the court upon its review of the termination order.

In short, we find no failure to afford appellant the protections established by R.C. 3319.161, no aberration prejudicing appellant in the process by which it was applied, and that the trial court did not err in dismissing appellant's complaint for reinstatement based on purported violations of the statute. The first assignment of error is overruled.

The second assignment of error is:

"The Trial Court erred to the prejudice of the Plaintiff-Appellant in dismissing the Complaint for Reinstatement by not properly considering procedural defects in the termination proceedings."

In support of this assertion of error, appellant posits that:

"The Referee's refusal to allow discovery in Plaintiff-Appellant's case constitutes a procedural error requiring reversal of the Board's decision to terminate."

Appellant claims that an exercise of the right to discovery was attempted by serving interrogatories on the board prior to the hearing before the referee.[3] The referee, however, ruled that discovery would not be permitted. Appellant claims to have been prejudiced thereby because of the consequent inability through discovery techniques to become familiar with the totality of the evidence and to prepare the case properly for hearing.

To maintain the thesis stated above, appellant submits that the Rules of Civil Procedure must be held to apply to any hearing held pursuant to R.C. 3319.16

and cites the Staff Notes to Civ. R. 1 as authority for such proposition. Among the observations of the Ohio Rules Advisory Committee Staff Notes apropos Civ. R. 1 we find the following:

"* * * [T]he Civil Rules will be applicable to special statutory proceedings adversary in nature unless there is a good and sufficient reason not to apply the rules."

Civ. R. 1(C) provides in pertinent part:

"These rules, to the extent that they would by their nature be clearly inapplicable, shall not apply to * * * (7) * * * all other special statutory proceedings; * * *"

The parties to this appeal agree that the hearing prescribed by R.C. 3319.16 is a special statutory proceeding within the meaning of Civ. R. 1.[4] It is nevertheless clear to us from a reading of R.C. 3319.16, that the Rules of Civil Procedure, insofar as discovery is concerned, are "clearly inapplicable" to the instant procedures. We arrive at this conclusion as a result of several considerations.

First, the statute establishes rigid time limitations for the various notices and hearings, all designed to speed the process of deciding the issue of termination. Thus, the teacher has ten days after receipt of notice of intent to terminate to demand a hearing, and the board is required, after receipt of such demand, to set a hearing within thirty days thereof, with twenty days' notice of such hearing date to be provided the teacher and superintendent. The referee's report must be made within ten days after the hearing terminates. It is apparent that the statute contemplates a speedy resolution of the issue, a purpose which would

---

[3] The record, we note, does not contain a copy of the proposed interrogatories. This infirmity, however, does not figure in our disposition of the assignment of error, which we choose to address on its merits.

[4] The penultimate paragraph of R.C.

3319.16 refers to the procedure to be followed by a court of common pleas when a teacher affected by an order of termination of contract elects to appeal therefrom and specifies in part that "[s]uch an action is a special proceeding within the purview of section 2505.02 of the Revised Code."

clearly not be served by extensive delays for discovery.

Second, the foregoing is particularly true inasmuch as R.C. 3319.16 avoids one of the primary purposes or reasons for discovery by its requirement that:

"Before terminating any contract, the employing board shall furnish the teacher a written notice signed by its treasurer of its intention to consider the termination of his contract *with full specification of the grounds for such consideration.*" (Emphasis added.)

Moreover, the statute requires that the hearings "* * * shall be confined to the grounds given for the termination." These requirements insure that the teacher will not be surprised by the substance of the case against him, and that he will have an opportunity to prepare himself for his defense, clearly a satisfaction of a principal purpose of discovery.

Finally, and perhaps of greatest importance, R.C. 3319.16 provides a three-tiered review of the evidence in support of and opposed to the asserted grounds of termination: where a referee is selected, there is the initial evidentiary hearing before the referee; second, there is a hearing before the board upon the referee's recommendation, where, *as here,* the opportunity may be given the teacher to present additional evidence in support of his position; and, third, an appeal to the court of common pleas where, *as here,* the opportunity may be afforded the teacher again to present additional evidence. This statutory approach assures, we conclude, that ample opportunity is afforded the teacher to respond to any assertions made against him, and guarantees that surprise or other tactical advantage can play no part in the outcome of the hearings.

Discovery under the Civil Rules, we conclude, would be inappropriate and supererogatory under these circumstances, and, therefore, no error attended the refusal to accommodate the appellant's demand therefor. We note, paren-thetically, that in addition to the foregoing, the appellant has failed to direct us to any specific portions of the record for the substance of what was felt might have been discovered had the relief sought been granted, or for the prejudice resulting from its denial. Indeed, it is quite clear that appellant was fully aware from the outset of these proceedings the basis upon which the appellee relied to terminate the contract of employment. And however debatable the merits of that basis might have been in the mind of appellant, it could scarcely be argued that it was unclear, ambiguous, or capable of producing surprise. The assignment of error is without merit, and is overruled.

In the third assignment of error, it is asserted that the evidence before the trial court failed to establish "other good and just cause" within the meaning of R.C. 3319.16 as a lawful ground for the board's termination of the appellant's teaching contract. Relying primarily upon *Rumora v. Bd. of Edn. of Ashtabula Area City School Dist.* (C.P. 1973), 43 Ohio Misc. 48 [72 O.O.2d 369], the appellant reasons that a termination is supported by good and just cause for purposes of the statute only when it is shown (1) that the teacher committed a violation of a reasonable rule or regulation of a school board, (2) that the violation was willful, and (3) that it persisted for an extended period of time. In the appellant's estimation, it cannot be said in the context of the facts and circumstances of the case *sub judice* that a teacher's failure to report for work over a five-day period as part of a contract dispute justifies termination for "other good and just cause" under the test we have been urged to adopt on the authority of *Rumora, supra.*

R.C. 3319.16, which enumerates the grounds upon which a teaching contract may be terminated, reads, in relevant part, as follows:

"The contract of a teacher may not be terminated except for gross inefficiency

or immorality; for willful and persistent violations of reasonable regulations of the board of education; *or for other good and just cause.*" (Emphasis added.)

In construing the statutory language, and more particularly in attempting to define the appropriate limits of "other good and just cause," we are unconvinced by the appellant's argument that the rule of *ejusdem generis* should be applied to confine "good and just cause," as the court of common pleas did in *Rumora*, to those instances embracing the substantial equivalent of a willful and persistent violation of a school board rule or regulation. According to the second paragraph of the syllabus of *State* v. *Aspell* (1967), 10 Ohio St. 2d 1 [39 O.O.2d 1], the rule of *ejusdem generis* comes into play only when a term of general signification is *conjoined* with terms confined to particular classes of objects having definite characteristics, and this is clearly not the situation confronting us in the instant case by virtue of the manner in which the General Assembly has chosen to cast the provisions of R.C. 3319.16. Under the wording of the statute, the term "other good and just cause" is used in the disjunctive, thereby reflecting, in our view, a legislative intent to recognize it as a ground for termination wholly separate and distinct from the preceding, specifically enumerated grounds. To limit its application in the manner advocated by the appellant to those instances involving a willful violation of a reasonable school board regulation occurring over an extended period of time would, therefore, defeat the legislative intent by depriving the term of any meaning apart from the second ground enumerated in the statute, thus making it nothing more than surplusage or a redundancy.

This is not to say, however, that a school board has unbridled authority to terminate a teaching contract for any reason under the guise of "other good and just cause." As the Ohio Supreme Court has noted in *Hale* v. *Bd. of Edn.* (1968), 13 Ohio St. 2d 92 [42 O.O.2d 286], the ground must embrace a "fairly serious matter," particularly in view of the fact that it is used with the words "gross inefficiency or immorality" and "willful and persistent violations." *Id.* at 98-99.

In *Hale, supra,* however, the court did not attempt to frame a precise definition for the term "other good and just cause." Rather, it held on the basis of the particular facts before it that a teacher's conviction for leaving the scene of an automobile accident, coupled with some inefficient but not grossly inefficient classroom conduct, did not amount to cause for terminating his contract.

Given its peculiar factual posture, *Hale, supra,* is of limited assistance in resolving the issue posed by the appellant in this case. This court has, however, addressed the matter of "good and just cause" in a recent discussion involving a factual setting remarkably similar to that now before us. In *Frye* v. *Bd. of Edn. of Deer Park School Dist.* (Mar. 9, 1977), Hamilton App. No. C-76020, unreported, a teacher refused to report for work and to perform her assigned classroom duties, and we held that such conduct amounted to good and just cause for the termination of her contract. Similarly, in *Thompson* v. *West Clermont Local Bd. of Edn.* (Oct. 28, 1981), Clermont App. No. CA-967, unreported, the Twelfth Appellate District has upheld a finding of just cause in support of the termination of a contract when the teacher refused to report for work over a five-day period as a consequence of a dispute with her employer concerning maternity leave.

We perceive no distinguishing factor of substance in the instant case upon which to reach a conclusion contrary to those in *Frye* and *Thompson, supra.* We hold, therefore, that where, as part of a labor dispute, a teacher willfully and deliberately refuses, over a period of

several days,[5] to report for work and to perform the various duties set forth in the contract of employment while ignoring a school board's order to return to work, there exists "other good and just cause" for the termination of the teaching contract within the meaning of R.C. 3319.16. In the words of *Hale, supra,* the actions of the appellant constituted, to say the least, a "fairly serious matter."

In arriving at this result, we reject a subsidiary claim advanced by the appellant to the effect that the hearings were prejudicially tainted by the referee's and/or board's rejection of the relevance of the appellant's teaching record, including past performance and job evaluations. There is no merit to this assertion in view of the plain and unequivocal language of R.C. 3319.16, which specifically directs that any hearing on the termination of a teaching contract must be confined to the grounds for termination given by the employing board.

In the instant case, the reason for termination given by the Mariemont District Board of Education related exclusively to the appellant's failure to report for work and in no way implicated the appellant's history of performance in the course of the employment relationship. For this reason, it is clear that any evidence touching upon the matter of performance would have been irrelevant, immaterial and beyond the lawful scope of the hearing provided by statute. In sum, it is our judgment that the hearing was properly confined to a single issue, *i.e.,* whether the willful and deliberate refusal to report for work as part of the labor dispute constituted good and just cause for termination of the appellant's teaching contract, and that resolution of the issue in no way turned upon an assessment of the appellant's prior performance of contractual duties.

We are similarly unpersuaded by the appellant's assertion that the school board failed to provide the notice required under R.C. 4117.04,[6] a part of the statutory scheme governing strikes by public employees commonly referred to as the Ferguson Act, and that such failure rendered the termination of the teaching contract invalid. As we have already noted, the termination of a teaching contract is governed specifically by R.C. 3319.16, and there is nothing in that statute to suggest that compliance with the Ferguson Act in a strike situation has any bearing upon the enumerated grounds given for the lawful termination of a contract, including the ground relied upon by the school board in the instant case. While the board might have elected to proceed under the Ferguson Act, it determined not to do so, but rather to proceed under R.C. 3319.16 which did not,

---

[5] The appellant maintained in argument before us that the school board in the instant case waived its right to rely on several days of absence as a ground for termination in view of its decision to allow the teachers to return to work by a specified date after the initial stoppage without jeopardy to their employment. No authority was cited to us in support of this proposition, and we are convinced that the board's conditional willingness to excuse or forgive prior absences can in no way be construed as a waiver for purposes of the termination proceedings; it was, we believe, an offer of an olive branch in the hope of reconciliation.

[6] The statute reads, in relevant part, as follows:

"Any public employee who, without the approval of his superior, unlawfully fails to report for duty, absents himself from his position, or abstains in whole or in part from full, faithful, and proper performance of his position for the purpose of inducing, influencing, or coercing a change in the conditions, as compensation, rights, privileges, or obligations of employment or of intimidating, coercing, or unlawfully influencing others from remaining in or from assuming such public employment is on strike, provided that notice that he is on strike shall be sent to such employee by his superior by mail addressed to his residence as set forth in his employment record."

we note, invoke the severe sanctions of R.C. 4117.03. We find nothing in the Ferguson Act which would dictate its use in this situation as an exclusive remedy. We conclude that R.C. 3319.16 and R.C. Chapter 4117 provide parallel remedies under the instant circumstances. The third assignment of error is, accordingly, without merit.

In the fourth assignment of error, it is asserted that the termination of the appellant's teaching contract was in violation of the Equal Protection Clause of the state and federal Constitutions. Such a violation was manifest, the appellant reasons, in the disparate treatment accorded by the board to the class of similarly situated individuals consisting of those teachers who, like the appellant, participated in the job action by refusing to report for work.

According to the appellant, the board's formal response to the job action was to adopt a policy pursuant to which any teacher participating in the job action who failed to report for work at the beginning of the school day on January 30, 1981, was subject to termination. In carrying out the policy, however, the board permitted several teachers to return to work after the designated time, while terminating only those other teachers, such as appellant, who were not "told that they could return to the classroom after the beginning of the school day on January 30." This, the appellant concludes, constituted discriminatory treatment that not only was without "compelling justification," but also bore no fair or substantial relationship to a legitimate interest of the school board.

In our judgment, the appellant's constitutional claim is untenable because the record in the case *sub judice* provides no support for the premise that the appellant and the other teachers who were terminated by the board were similarly situated members of a unified class that also embraced those teachers who initially participated in the job action but were not terminated. Although it may be said that the two groups were similarly situated at the commencement of the job action by virtue of the refusal of all participating teachers to report for work, it is clear that such was not the case at the time the board took action to terminate the contracts of those teachers such as the appellant who, notwithstanding the board's order to return to work, continued to participate in the job action. Unlike these individuals, the three teachers, who, after initially participating in the job action, voluntarily returned to work at various times on January 30 were not terminated. No teacher who remained off the job after January 30, the class to which appellant belonged, escaped termination. The fact that the three teachers voluntarily resumed their contractual duties in substantial compliance with the board's order thus created a marked dissimilarity within the group that the appellant would have us regard as a unified class, and thereby provided a rational basis for the board in its decision to terminate only those teachers who continued to refuse to report for work. Given this dissimilarity, we conclude that there is no basis upon which to challenge the termination of the appellant's teaching contract on equal protection grounds. *Davis* v. *Georgia State Bd. of Edn.* (C.A. 5, 1969), 408 F.2d 1014; *Whitsel* v. *Southeast Local School Dist.* (C.A. 6, 1973), 484 F.2d 1222 [71 O.O.2d 381]. The fourth assignment of error is, accordingly, not well-taken.

The fifth assignment of error is:

"The Trial Court erred to the prejudice of Plaintiff-Appellant in dismissing the complaint for reinstatement by not properly or completely considering Plaintiff-Appellant's appeal."

Appellant predicates this assignment upon the observation of the court below prefacing its disposition of the issues, which it first characterized as being solely legal, and then commented that the court "cannot substitute its judgment on the facts and ultimate decision of each case

for that of the defendant-appellee Board." It is argued that such statement constitutes prejudicial error because it demonstrates that the court misapprehended its duty and authority, which defect, it is said, tainted the entire proceeding and prevented a complete and proper consideration of the cause. The particular thrust of the argument is that the court failed to apply the proper standard of review when considering the issues. In support, appellant cites *Hale* v. *Bd. of Edn.* (1968), 13 Ohio St. 2d 92 [42 O.O.2d 286].[7]

We applied *Hale, supra,* in deciding *Charles* v. *Princeton Bd. of Edn.* (Sept. 15, 1982), Hamilton App. No. C-820132, unreported. There, we held the appropriate standard of review to be the following:

"Under R.C. 3319.16 it is the duty of the Court of Common Pleas to examine the transcript and record of the hearing and 'grant or deny the relief prayed for in the petition as may be proper in accordance with the evidence adduced at the hearing.' "

The authority of a court of common pleas to reverse an order of a board of education when it finds that such order terminating a teacher's contract is not supported by or is contrary to the weight of the evidence, as *Hale* and *Charles, supra,* clearly authorize, does not, however, include the right, willy-nilly, to substitute its judgment on factual issues for that of the board. The overriding principle remains as stated in *Simon* v. *Lake Geauga Printing Co.* (1982), 69 Ohio St. 2d 41, 45 [23 O.O.3d 57], that "[a] reviewing court cannot usurp the function of the triers of fact by substituting its judgment for theirs."[8] The two principles are not mutually exclusive, as appellant's argument appears to posit; an order may be found, upon a review of the entire record, to be contrary to the weight of the evidence, without any necessity of substituting, as to any factual matters, the judgment of the reviewing court for that of the trier of facts. The comment of the trial court, whether or not inartful, appears no more than a recognition of that rule. Certainly, the record will not support a conclusion that the trial court intended or did in fact improperly or unlawfully narrow its permissible scope of review from that authorized by R.C. 3319.16, with resultant prejudice to appellant.

The assignment of error is without merit and is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

PALMER, P.J., SHANNON and BLACK, JJ., concur.

---

[7] The first paragraph of the syllabus is:

"The Common Pleas Court may reverse an order of termination of a teacher's contract, made by a Board of Education, where it finds that such order is not supported by or is against the weight of the evidence. (Section 3319.16, Revised Code, construed and applied.)"

[8] There, a court of common pleas had before it pursuant to R.C. 4141.28 a decision of the Board of Employment Services. The Supreme Court cited *Brown-Brockmeyer Co.* v. *Roach* (1947), 148 Ohio St. 511, 518 [36 O.O. 167], for the additional directive that the decision of purely factual questions is primarily within the province of the referee and the board of review. See, also, *Dudukovich* v. *Housing Authority* (1979), 58 Ohio St. 2d 202, 207 [12 O.O.3d 198].