974 F.2d 1338
 77 Ed. Law Rep. 103
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JOHNSTON-TAYLOR, et al., Plaintiffs-Appellants,
v.
GANNON, et al., Defendants-Appellees.
 No. 91-2398.
 United States Court of Appeals, Sixth Circuit.
 Sept. 2, 1992.
 
 Before BOYCE F. MARTIN, Jr. and NATHANIEL R. JONES, Circuit Judges, and FEIKENS, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Following the first appeal of this case, Johnston-Taylor v. Gannon, 907 F.2d 1577 (6th Cir.1990), we remanded for further proceedings to determine the merits of plaintiffs' substantive and procedural due process claims. On remand, the district court reaffirmed its grant of summary judgment to the defendants. For the following reasons, we affirm.
 
 
 2
 In our earlier opinion we determined that David Arganian and the Estate of Professor Edward Taylor had a property interest in continued employment with the university. Both Arganian and Taylor were faculty members at Lansing Community College and their permanent full-time employment was terminated in 1983 due to the alleged existence of a financial exigency at the college. We found that professors with tenure or with a continuing contract may not be discharged without receiving a hearing in which they are informed of the grounds for their dismissal and given the opportunity to challenge the sufficiency of those grounds. 907 F.2d at 1581 (citing Whitsel v. Southeast Local District, 44 F.2d 1222, 1228 (6th Cir.1973)). Because the original record was unclear as to the process the two professors received at their termination, as well as to the substantive nature of the alleged financial exigency, we issued a narrow opinion remanding this matter to the district court to develop the record further.
 
 
 3
 On remand, the district court held a three-day evidentiary hearing on the issues of procedural and substantive due process. With regard to the procedural due process afforded the two men, the court made several findings. The court found that Arganian and Taylor, as well as other faculty members, were sent written notification on July 22, 1983, advising them that their employment would be terminated in forty-five days because of a reduction in staff. For the purposes of the procedural due process analysis, the court found that the actual date of termination was September 6, 1983. This was the date, forty-five days after the July 22 letter, on which the terminations were to become effective. Within a week of receiving the notification letter, Arganian met twice with college personnel to discuss the reasons for his impending lay-off. On July 25, Arganian met with Department Chair Head Dr. Anderson, who advised Arganian that the three factors considered in Arganian's selection for termination were the full-time to part-time ratio in his department, personal evaluations, and declining enrollment. Arganian then met with Ronald Dove, the Director of Personnel, on July 27. Dove explained Arganian was not fired, but merely laid off as part of a reduction in the work force. According to Arganian, Dove stated he could not give specific reasons for Arganian's layoff. The court specifically rejected Arganian's testimony to this effect as not credible.
 
 
 4
 Professor Taylor met with Dove on July 27. Although Taylor was not accompanied by an attorney at this meeting, he was accompanied by the vice-president of his union, Dennis Meyer. When Dove began to tell Taylor why he was laid off, Taylor responded he did not want to "hear it" from Dove. Neither Arganian or Taylor, nor the representatives, asked for any documents or additional facts concerning their selection for lay-off, nor did the plaintiffs request further opportunities to meet with Dove or other college representatives.
 
 
 5
 On or about August 12, Arganian and Taylor, as well as other faculty members, filed written grievances protesting their lay-off under the collective bargaining agreement. On August 25, prior to the effective date of their lay-off, the first of three hearings was held. At this hearing, the college presented specific reasons and findings that led to the selection of Arganian and Taylor for lay-off, including declining enrollment figures, full-time and part-time ratios, and performance evaluations. The plaintiffs made no request for additional documentation to support this data. Following two extensions requested by the professors, a second hearing was held on September 13. A third hearing was held on October 25. During both hearings, the parties discussed the bases for the two men's selection for lay-off and the underlying economic circumstances. The only documentation requested was previous promotion scores. On November 23, following the hearings, Arganian and Taylor received a detailed written explanation for their lay-offs. The lay-off grievances went into arbitration in July and August of 1984. The arbitrator determined the lay-offs did not violate the collective bargaining agreement.
 
 
 6
 The court found that the college faced a financial exigency for the fiscal year of 1983-1984 and took various measures to reduce the deficit by over one million dollars prior to resorting to lay-offs of full-time staff. The court gave weight to testimony by the college business manager, Bruce Newman, that financial difficulties began in the 1979-1980 fiscal year due to decreasing revenues and increasing costs. State appropriations were cut dramatically between 1979 and 1983 and state support per student declined by almost 11% during that time period. At the same time, salaries, which represented 70-75% of the budget, increased by approximately 26%. To combat the financial problems, the college increased student tuition by 45% during 1979-1983 and did not fill vacated positions. By April of 1983, the college anticipated a budget deficit in the amount of $2,331,000. The board established a budget and finance task force to study what means might be taken to generate revenue and save money. In June, the college's attempts to raise an additional $610,000 through a millage was defeated. At this time the anticipated deficit was $1,674,000. The college then instituted the following cost-reduction measures: (1) tuition was raised by an additional dollar per credit hour; (2) the president declined a salary increase; (3) the members of the president's council agreed to accept only a 5% raise instead of the scheduled 8% increase, part-time personnel budgets were reduced; and, (4) the school offered an early retirement option. These measures reduced the budget deficit by $343,270.
 
 
 7
 The district court also addressed the manner in which Arganian and Taylor were selected for termination. The court found that use of only three of fourteen criteria, formulated by agreement between the college and union, was a rational basis for the lay-offs. The standard criteria, which were not prioritized, were as follows: (1) affirmative action; (2) budgetary restrictions; (3) community needs; (4) cost effectiveness; (5) credit hour production; (6) diversity of personnel; (7) ease of program delivery; (8) enrollment trends; (9) institutional needs and program priorities; (10) interdisciplinary adaptability; (11) length of employee services; (12) personal evaluations and qualifications; (13) program costs; and (14) ratio of full-time to part-time employees. Arganian and Taylor taught in the Division of Arts and Science and the Dean of the Division, Sam Kintzer, was given primary responsibility for making the initial selections for staff reduction. Kintzer considered three criteria most relevant to his department's layoff determinations: (1) the three-year history of program enrollments; (2) the ratio of full-time and part-time faculty; and (3) performance evaluations. Kintzer was particularly concerned with the full-time and part-time ratio. Kintzer determined that program costs, ease of program delivery, and community needs were not particularly relevant categories. He also considered it meaningless to compare the faculty members on length of service because most of the faculty had long tenure. Deans from other divisions apparently gave different weight to various criteria and did not employ the precise method used by Kintzer. The court concluded that its role was not to determine whether the three criteria used by Kintzer were the best criteria, simply whether the criteria used by Kintzer were rationally based. The court concluded that Kintzer's emphasis of the three criteria was rationally based and permissible.
 
 
 8
 Based on the record before us, we find the district court did not improperly grant summary judgment to the defendants. Although we refrain from agreeing at this time with the district court's suggestion that Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985), is the standard by which this matter should be judged, we find the record sufficient to support a conclusion that a Whitsel -type hearing, see Whitsel v. Southeast Local School District, 484 F.2d 1222 (6th Cir.1973), was afforded the plaintiffs. In Whitsel, we found that a teacher's continuing contract could not have been terminated without a hearing in which he would be informed of the grounds for dismissal and be given an opportunity to challenge the sufficiency of the grounds. 484 F.2d at 1222. We emphasized that this finding was derived from the pertinent Ohio statute, which specifies the grounds for termination of a continuing contract. The Ohio statute requires written notice, time to prepare a defense, the option of a referee to conduct the hearing instead of the school board, a stenographic record, the right of confrontation, the right to cancel, and the right to subpoena witnesses. Id. at 1229. Our finding in Whitsel was based upon a notion that the Ohio statute satisfied federal constitutional due process requirements. However, we never held in Whitsel that the requirements in the Ohio statute represented minimum standards of federal constitutional due process. Id. ("[T]ested by every standard ever enunciated, these rights [as announced in the Ohio Statute] constitute procedural due process in a termination proceeding.").
 
 
 9
 The record developed at the evidentiary hearing on remand clearly reveals that the professors were given sufficient notice and opportunity to challenge the grounds for their lay-off prior to the effective date of the lay-off. The court expressly found that the lay-off did not occur until forty-five days after the date on which the board voted to lay off the two professors. Both professors received immediate written notice of their impending lay-off and an explanation that the basis for their lay-off was a staff reduction due to a financial exigency. Both men had actual or constructive knowledge of the underlying budget troubles and, within a week of receiving the notice, both professors met with the personnel director who attempted to explain the manner in which their names were selected for lay-off. Both men also had opportunity for a more elaborate pre-termination hearing at the level-two grievance proceeding on August 25, 1983. We also find sufficient evidence in the record to support the district court's conclusion that the college faced an exigent financial circumstance and that the choice of three of the fourteen criteria as the basis for terminating Professors Arganian and Taylor was reasonable. Plaintiff's equal protection and free speech arguments are without merit.
 
 
 10
 For the foregoing reasons the district court is affirmed.
 
 
 
 *
 The Honorable John Feikens, Senior United States District Judge for the Eastern District of Michigan, sitting by designation